455 So.2d 727 (1984)
Bobby Glen WILCHER
v.
STATE of Mississippi.
No. 54959.
Supreme Court of Mississippi.
July 11, 1984.
Rehearing Denied August 22, 1984.
*729 Robert N. Brooks, James E. Smith, Jr., Carthage, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:
On March 11, 1982 the appellant, Bobby Glen Wilcher, was indicted for the capital murders of Velma Odell Noblin and Katie Bell Moore. The indictments charged that he murdered these two ladies while he was robbing or attempting to rob Velma Odell Noblin and while he was engaged in the crime of kidnapping her and Katie Bell Moore. He was tried separately for these murders, though they arose from a single incident. This appeal stems from a capital murder conviction for the killing of Katie Bell Moore. Wilcher has previously been tried for the capital murder of Velma Odell Noblin. He was found guilty of that charge and sentenced to death. That conviction and sentence have been affirmed by this Court in Wilcher v. State, 448 So.2d 927 (Miss. 1984). The petition for rehearing in that cause has been denied. In the instant appeal Wilcher assigns the following errors:
1. The Trial Court erred in not sustaining Appellant's plea of former or double jeopardy.

*730 2. The Trial Court erred in overruling the Appellant's motions for continuance.
3. The Trial Court erred in allowing the death qualification voir dire question.
4. The Trial Court erred in refusing to allow the defendant to cross examine Gene Wilcher, when called as a witness for the State.
5. The Trial Court erred in admitting into evidence the watch, rings and necklace of Velma Odell Noblin for the reason that they were the fruits of an illegal search.
6. The Trial Court erred in admitting into evidence, over objection of counsel, Appellant's oral and written statements and the fruits thereof.
7. The Trial Court erred in granting Instruction S-1 and S-7 and erred in refusing Instruction D-2 during the guilt phase.
8. The Trial Court erred in refusing Instructions D-17 and D-37 during the guilt phase.
9. The Trial Court erred in refusing Instructions D-43 and D-44 during the guilt phase.
10. The Trial Court erred in granting Instructions S-1, and S-2, and in refusing D-15, during the sentencing phase.
11. The Trial Court erred in refusing Instruction D-11 during the sentencing phase.
12. The Trial Court erred in entering its supplemental judgment of September 23, 1982.

FACTS
It would serve no purpose to detail the violent manner in which Wilcher claimed his victims lives. For purposes of this appeal it is sufficient to state that Wilcher met Mrs. Noblin and Ms. Moore in a Scott County bar. When the bar closed for the evening he persuaded them to give him a ride home during which he guided them to a deserted forest service road in the Bienville National Forest where he stabbed them to death.

DISCUSSION OF POINTS RAISED ON APPEAL
A number of Wilcher's assignments of error in this appeal are identical to those made in his appeal from his capital murder conviction in relation to the death of Velma Odell Noblin. Because those assignments deal with the exact same factual circumstances, our opinion in that cause disposes of those issues. For that reason they will be discussed first.

ADMISSIBILITY OF THE JEWELRY FOUND IN WILCHER'S ROOM
Wilcher contends that a search of his room conducted by Deputy Otis Kelly and Constable Albert Harkey at the invitation of Wilcher's father constituted a illegal search and seizure in violation of the Fourth and Fourteenth Amendments. Wilcher contends that although he lived in his father's house, his father had no authority to allow the warrantless search of his bedroom. In our prior opinion we held that Wilcher did not have exclusive dominion and control over his room and that his father was authorized to enter it at anytime and permit anyone else to so enter. We held that the jewelry was therefore admissible. That holding controls our opinion here. Wilcher v. State, 448 So.2d 927 (Miss. 1984).

ADMISSIBILITY OF THE CONFESSIONS
Again, these are the same confessions ruled admissible in the first Wilcher trial. Because Wilcher is unable to assign any new reason as to why the confessions should be inadmissible, we defer to our holding in the prior Wilcher decision. Wilcher v. State, 448 So.2d 927 (Miss. 1984).

THE TRIAL COURT'S REFUSAL TO ALLOW A CONTINUANCE
Prior to trial, on August 6, 1982, the defense filed a motion for continuance until the October, 1982 term. That motion challenged the circuit judge's authority to set this case for trial at a special term. This *731 issue was also raised in the appeal from Wilcher's first trial which was also tried at a special term prior to the October, 1982 term. In addressing that issue we held that § 9-1-1 of the Mississippi Code Annotated (1972) gave the circuit judge clear statutory authority to try this case at a special term. We find no valid reason preventing us from adopting that holding in this case also. Therefore, this assignment of error is without merit. Wilcher v. State, 448 So.2d 927 (Miss. 1984).

THE KIDNAPPING CHARGE
Wilcher contends that the trial court erred in granting Instructions S-1 and S-7 and in refusing Instruction D-2, all of which dealt with Wilcher's culpability on the charge of kidnapping, one of the underlying felonies charged in the indictment. This issue was also addressed in the opinion affirming Wilcher's death sentence in connection with the capital murder of Velma Odell Noblin. Wilcher contends that the proof was insufficient to show that he had kidnapped the two ladies and that they had voluntarily accompanied him to the woods. In our previous opinion we recognized that the crime of kidnapping may be accomplished by trickery and deceit and that a jury issue had been made on whether Wilcher had tricked the ladies into being secretly confined against their will. The elements of kidnapping having been sufficiently shown in this trial also, we find no reason to hold differently here. Therefore, this assignment of error is without merit. Wilcher v. State, 448 So.2d 927 (Miss. 1984).

DOUBLE JEOPARDY
This is the first of Wilcher's assignments of error which is not disposed of by our holding in the first Wilcher appeal.
Wilcher's argument asserting that he has been subjected to double jeopardy involves two separate assertions which are not well distinguished within his brief. The first is that the state should be barred by the proscription against double jeopardy from using the same underlying felonies to constitute capital murder in both cases. As will be recalled, both indictments charged Wilcher with murder while in the course of robbing Velma Odell Noblin and kidnapping Mrs. Noblin and Ms. Moore. Therefore, under both indictments all three underlying felonies are required to be proven. Wilcher contends that by having found him guilty of the three underlying felonies in his trial for the murder of Mrs. Noblin, he may not again be prosecuted for those underlying felonies in his trial for the murder of Ms. Moore.
In the case of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court addressed the issue of double jeopardy. The Court there held that the doctrine of collateral estoppel was embodied in the guarantee against double jeopardy and that once an issue of ultimate fact has been determined by valid and final judgment that issue cannot again be litigated between the parties in any future lawsuit. In Ashe, the defendant was accused of robbing several members of a poker game. He was first tried for the robbery of one poker player and was found not guilty. Following that verdict the state shored up the holes in its case and indicted him for the robbery of a second poker player whose money was taken in the same holdup. This time Ashe was found guilty. The United States Supreme Court reversed his conviction and held that the verdict of not guilty in the first trial decided the ultimate fact that Ashe had not been involved in the robbery. The Court specifically held that question: "Is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the state could constitutionally hale him before a new jury to litigate that issue again." 397 U.S. U.S at 446, 90 S.Ct. at 1189, 25 L.Ed.2d at 477. In a concurring opinion authored by Justice Brennan, it was noted that "collateral estoppel would not prevent multiple prosecutions when the first trial ends in a verdict of guilty." *732 Footnote 13 to Justice Brennan's concurrence. 397 U.S. at 459, 90 S.Ct. at 1202, 25 L.Ed.2d at 484. From a reading of the Ashe decision, it is clear that the proscription against double jeopardy was intended to prevent abuse of the criminal process in the form of multiple or vexatious prosecutions for a single offense. The Ashe court held that the double jeopardy proscription was applicable for the charges which arose from a single transaction.
In Maycock v. Reed, 328 So.2d 349 (Miss. 1976), this Court affirmed the denial of a writ of habeas corpus where the appellant asserted that his four convictions were the result of a single transaction. In that case, Maycock was indicted four times for the following crimes: (1) the September 9, 1973 sale of marijuana to Dempsey Newman. (2) The September 9, 1973 sale of marijuana to James K. Anthony. (3) The September 9, 1973 sale of 150 tablets of LSD to Dempsey Newman. (4) The September 9, 1973 sale of 50 tablets of LSD to James K. Anthony. In addressing the question of whether these offenses constituted a single transaction as they occurred at one time, we held:
We find no merit in appellant's contention that the circuit court was in error in failing to hold that the "one transaction rule" applies. It is contended that the four indictments for separate crimes grew out of the same facts and circumstances. At the most all that the proof in the record shows on this issue is that there were four separate transactions on the same occasion, which of course, does not come within the one transaction rule announced in Laughter v. State, 241 So.2d 641 (Miss. 1970). We pointed out in Wolf v. State, 281 So.2d 445 (Miss. 1973) that an accused may not be prosecuted for two offenses when both arise out of the same transaction, where one is necessarily incident to the other. But where, as here, the same transaction gives rise to separate and distinct offenses, prosecution for one will not bar prosecution for the other.
328 So.2d at 352.
In the instant case Wilcher was not being retried for a crime which grew out of the same transaction. The murder of Ms. Moore was distinct from the murder of Mrs. Noblin. The fact that the underlying felonies were the same is simply part of the circumstance of each separate murder. It is a factor which the legislature has determined distinguishes a simple murder from one of those exceptional cases in which the defendant should be put to death. Certainly those underlying felonies were matters which the state was required to prove in order to obtain a capital murder conviction; however, they constituted only a portion of the two distinct crimes. The state was also required to prove the ultimate fact that the murder then under trial occurred during the course of those felonies. Of course, had the first jury determined that Wilcher was not guilty of the underlying felonies the state may logically have been barred from prosecuting that claim in the second trial. That was not the case here. As pointed out in Justice Brennan's concurrence in Ashe v. Swenson, supra, a verdict of guilty does not bar a trial for a separate distinct crime.
Wilcher's next argument regarding being subjected to double jeopardy is that by the use of the same aggravating circumstances in the second trial as those used in the first, his death sentence is excessive or disproportionate. This argument makes little sense. What could be more proportionate than a death sentence which is returned under an identical fact situation to another. They are exactly proportionate. Also, we have compared this case to those death sentences that we have affirmed since Bell v. State, 360 So.2d 1206 (Miss. 1978) and find that Wilcher's sentence of death is not disportionate to those cases. See Appendix A.

THE DEATH QUALIFICATION VOIR DIRE QUESTION
Prior to trial Wilcher filed a motion in limine in which he requested that the Court order that the state not ask the following or a similar question: Are you *733 conscientiously opposed to capital punishment? The court overruled this motion and during voir dire the state did ask a similar question. Venireman Monroe stated that he was conscientiously opposed to the death penalty and would have a hard time sentencing someone to death. The trial court did not excuse Monroe for cause and the state exercised one of its peremptory challenges to remove him from the jury panel.
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the benchmark case in this area, the United States Supreme Court held that it is a violation of due process to remove for cause jurors who voice general objections to the death penalty or express conscientious or religious scruples against its infliction. That same year, in Armstrong v. State, 214 So.2d 589 (Miss. 1968), this Court addressed the specific question of whether a venire may be asked "Are you opposed to the death penalty under any circumstances?" In answering this question we held:
The proper method of bringing the death penalty to the attention of the special veniremen is for the trial judge to inform them that they have been summoned as veniremen in a capital case and that a verdict of guilty could result in the infliction of the death penalty. The judge should then ask them if any member of the panel has any conscientious scruples against the infliction of the death penalty, when the law authorizes it, in proper cases, and where the testimony warrants it. If there are those who say that they are opposed to the death penalty, the trial judge should then go further and ask those veniremen, who have answered in the affirmative, whether or not they could, nevertheless, follow the testimony and the instructions of the court and return a verdict of guilty although that verdict could result in the death penalty, if they, being the judges of the weight and worth of the evidence, were convinced of the guilt of the defendant and the circumstances warranted such a verdict. Those who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released. The mere fact that a venireman is opposed to the death penalty does not disqualify him as a juryman, if he can do his duty as a citizen and juror and follow the instructions of the court, and where he is convinced of the defendant's guilt he can convict him although the verdict of the jury may result in the death penalty's being inflicted upon the defendant.
214 So.2d at 593.
In Irving v. State, 361 So.2d 1360 (Miss. 1978), we noted that the above quoted procedure was the proper method to be employed by trial judges and that "almost the identical procedure was approved by the United States Supreme Court in the recent case of Lockett v. Ohio, supra" 361 So.2d at 1309 citing Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Although in the instant case the prosecutor was allowed to ask the question, as opposed to the circuit judge, we find no error in light of the fact that venireman Monroe was not removed for cause. Even had the judge conducted the voir dire the State would still have been free to exercise a peremptory challenge to excuse Monroe. Therefore, this assignment of error is without merit.

REFUSAL TO ALLOW WILCHER TO CROSS-EXAMINE HIS FATHER DURING A HEARING OUT OF THE PRESENCE OF THE JURY ON THE ADMISSIBILITY OF THE FRUITS OF THE SEARCH
During a hearing out of the presence of the jury on the admissibility of the jewelry found in Wilcher's bedroom, his father, Gene Wilcher, was called to the stand. Following an examination of the senior Wilcher by the district attorney, the defense counsel requested permission to approach the bench and an off the record conversation was had. Following that the trial judge entered into the record a statement explaining that he had denied Wilcher's request to personally cross-examine his *734 father during this hearing. Wilcher now complains that it was a violation of the Mississippi Constitution of 1890, Article 3, Section 26, to refuse him the right to cross-examine his father.
This Court has spoken on the precise question involved here, i.e., the right to cross-examine a witness under Article 3, Section 26 of Mississippi Constitution of 1890, when the party is represented by counsel. In Jerry Lynn Young v. State, 425 So.2d 1022 (Miss. 1983), we held that a trial court is free to exercise its power to prescribe the manner in which the business of the court is conducted and that Article 3, Section 26 of the Mississippi Constitution of 1890 does not grant to a defendant the absolute right to conduct a cross-examination where that defendant is also represented by counsel. Therefore, there is no merit to this assignment of error.

THE REFUSAL OF INSTRUCTIONS D-17 AND D-37 DURING THE GUILT PHASE
Wilcher argues that the failure to grant Instructions D-17 and D-37 require reversal of this cause. Those instructions are in effect procedural and inform the jury that in a capital case that should they return a verdict of guilty it would be necessary to hold another hearing to determine the sentence. Because the court had already granted Instruction S-2 which informed the jury that should they return a verdict of anything other than capital murder no further hearing would be held, we find no merit in this assignment.

THE REFUSAL OF INSTRUCTIONS D-43 AND D-44 DURING THE GUILT PHASE
By Submitting Instruction D-43, Wilcher attempted to have the jury instructed on a charge of accessory after the fact. We have repeatedly held that the crime of accessory after the fact is an entirely separate and distinct offense and not a constituent part of an offense so as to be a lesser included offense. In Box v. State, 241 So.2d 158 (Miss. 1970), this Court held that accessory after the fact is a distinct crime for which a person cannot be punished unless indicted. Wilcher was not indicted on a charge of accessory after the fact of murder and therefore, an instruction on that offense would have been improper and would have constituted reversible error.
Instruction D-44 read as follows:
The Court instructs the jury that an accessory after the fact is one who concealed, received, or relieved any felon, or aided or assisted any felon, knowing that such person had committed felony, with intent to enable such felon to escape or to avoid arrest, trial, conviction or punishment, after the commission of such felony.
The Defendant is not required to establish the truth that he was an accessory after the fact to your satisfaction, but if the evidence or lack of evidence in this case raises in the minds of the jury a reasonable doubt as to whether the Defendant was only an accessory after the fact, then you must give him the benefit of the doubt and return a verdict of "not guilty." (Emphasis added)
Undoubtedly a defendant is entitled to have the jury instructed that if there was a reasonable doubt that his version of the events was the true version, then they must give him the benefit of the doubt and return a verdict of not guilty. We are of the opinion that the jury was adequately instructed in this regard by the following eight instructions which are set forth in full:
INSTRUCTION D-8
The Court instructs the Jury that under the law, the terms "reasonable doubt" as used by the Court in instructions to juries, as the law in the trial of cases, is a sacred and substantial right of this Defendant, Bobby Glen Wilcher, charged with this crime, given and guaranteed unto him by the law of the land, and that such reasonable doubt may arise from the testimony or any part of the testimony, or the lack of testimony, *735 and that under the law, it is the sworn duty of the jury, and each member thereof, that is [sic] there is a reasonable doubt in the mind of any member of this jury as to the guilt of the Defendant, it is your sworn duty to return a verdict of "Not Guilty." (Emphasis added)
INSTRUCTION D-9
The Court charges the jury that it is your sworn duty to vote on each and every ballot of the jury for an acquittal of the Defendant, unless, after conferring with the other jurors, your mind is convinced beyond all reasonable doubt and to a moral certainty and not from any lack of evidence of the guilt of the Defendant. You cannot, under your oath as a juror, compromise your honest convictions from the evidence, or lack of evidence, as to the guilt or innocence of the Defendant for the purpose of bringing in a verdict. Under your oath and under the law, you should never surrender such conviction simply because every other member of the jury may disagree with you or insist that you yield to save the time of the Court or prevent a mistrial, or shorten the labors of the jury panel, or because of anything or reason whatsoever, or for any purpose whatsoever. You should vote not guilty as long as, after a consultation of the evidence, or the lack of evidence in this case, the State has failed to prove Defendant's guilt to a moral certainty. (Emphasis added)
INSTRUCTION D-13
The Court instructs the jury that the law of this State gives a Defendant the right to testify in his own behalf, and the jury has no right to disbelieve him simply because he is the Defendant. His testimony is entitled to just as much faith and credit as the jury under all the circumstances think it should have. Furthermore, his testimony is just as entitled to consideration as that of any other witness who testified in this case.
INSTRUCTION D-14
The Court instructs the jury that where the Defendant is the only eye-witness to the alleged homicide, his version, if reasonable, must be accepted as true, unless substantially, contradicted in material particulars by a credible witness or witnesses for the State, or by the physical facts or by the facts of common knowledge. (Emphasis added)
INSTRUCTION D-15
The Court instructs the jury that where there are two plausible theories, sustained by the evidence, one tending to show the Defendant not guilty, and the other tending to show the Defendant guilty, and the jury is unable to determine which theory is true, it must accept the theory favorable to the Defendant, and find the Defendant not guilty. (Emphasis added)
INSTRUCTION D-19
The Defendant has been charged by an indictment with the crime of capital murder for having willfully, unlawfully, feloniously, without the authority of law, and of his malice aforethought, killed and murdered Kattie [sic] Bell Moore, a human being, while he, the said Bobby Glen Wilcher, was engaged then and there in a commission of the crime of robbery or an attempt to commit the crime of robbery of the said Velma Odell Noblin, and while he, the said Bobby Glen Wilcher, was engaged then and there in the commission of the crime of kidnapping of Velma Odell Noblin and Katie Bell Moore, human beings.
Before you can find the Defendant guilty of capital murder, you must find from the evidence in this case beyond a reasonable doubt to a moral certainty that the Defendant did willfully, unlawfully, feloniously, without the authority of law, and of his malice aforethought, kill and murder Katie Bell Moore, and [sic] human being, while he, the said Bobby Glen Wilcher, was engaged then *736 and therein the commission of the crime of robbery or an attempt to commit the crime of robbery of the said Velma Odell Noblin, while he, the said Bobby Glen Wilcher, was engaged then and there in the commission of the crime of kidnapping of Velma Odell Noblin and the said Kattie [sic] Bell Moore, human beings.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt and to a moral certainty, then you shall find the Defendant not guilty of capital murder. (Emphasis added)
INSTRUCTION D-34
The Court instructs the jury that the burden of proof is upon the State to establish the Defendant's guilt of the crime charged in the indictment, and that it must do, not simply by more and better evidence than is offered for his acquittal, but the State must prove his guilt so clearly and conclusively as to exclude from the mind of every single person on the jury every reasonable doubt of his guilt, and to make his guilt morally certain. The Defendant is bound to offer no proof, or if he has offered any, he is entitled to an acquittal on the whole evidence, unless that evidence has convinced you beyond a reasonable doubt and to a moral certainty that he is guilty of the crime charged in the indictment and so long as it is reasonably possible to account for the evidence on any theory or hypothesis consistent with his innocence, he must be acquitted, however strongly you believe him to be guilty. You may even believe it highly probable that he is guilty and yet, in such case, you must vote "Not Guilty." (Emphasis added)
INSTRUCTION D-36
The Court instructs the jury that the Defendant, Bobby Glen Wilcher, is never required to prove his innocence, and in order for him to be acquitted it is not necessary that the jury be satisfied in their minds that he is in fact innocent, but whenever there arises out of the evidence a reasonable probability that he is innocent, then he is entitled to an acquittal for reasonable probability of innocence is always a reasonable doubt of guilt. In other words, although the theory that he is guilty is more reasonable than the theory that he is innocent, yet, if there arises out of the evidence, and there is supported by the evidence, any reasonable theory under which the Defendant may probably be innocent, he is entitled to be acquitted. (Emphasis added)
Because the above quoted instructions adequately inform the jury of the respect, weight and consequence of Wilcher's version of the incident, we find no merit in this assignment of error.

THE GRANTING OF S-1 AND S-2 AND THE REFUSAL OF D-15 DURING THE SENTENCING PHASE
Wilcher complains that Instructions S-1 and S-2 improperly shift the burden of proof to the defendant because they require that the jury find that the mitigating circumstances outweigh the aggravating circumstances in order to impose a life sentence. Wilcher argues that the proper standard is that the jury must find that the aggravating circumstances outweigh the mitigating circumstances in order to impose the death penalty. In Coleman v. State, 378 So.2d 640 (Miss. 1979), we held that the burden of proof during the sentencing phase remains on the state and that the jury was free to return a life sentence without finding any mitigating circumstances. As the state correctly points out, the jury was so instructed in this case. See Instruction D-12. Therefore, we hold that the burden of proof was not improperly shifted to Wilcher during the sentencing phase.

THE REFUSAL OF INSTRUCTION D-11 DURING THE SENTENCING PHASE
Instruction D-11 reads as follows:
The court instructs the jury that in your deliberations on the question of *737 punishment you are to presume that if you sentence the defendant to life imprisonment, that the defendant will spend the rest of his life in prison, and you are to presume that if you sentence the defendant to death that he will be administered lethal gas until dead. You are to make no other presumptions.
An identical instruction was requested and rejected in two cases that this Court has previously affirmed. Johnson v. State, 416 So.2d 383 (Miss. 1982); Bullock v. State, 391 So.2d 601 (Miss. 1981). In both of those cases, this Court held that such an instruction was improper and calculated to confuse the jury. Wilcher argues that in the instant case the instruction was proper because during the jury's deliberations on the sentencing phase the trial judge received a note from the jury which read: "Define life in prison, life with parole or life without parole." At that time the trial judge responded to the jury by saying that he could not answer their inquiry. There was no objection by either the state or Wilcher as to the trial judge's response. Wilcher now contends that the jury's concern over this question made the granting of Instruction D-11 proper.
In answering Wilcher's contention first it must be remembered that Instruction D-11 was rejected prior to the jury's deliberation and note to the judge. Second, if the instruction was improper for erroneously stating the law and confusing the jury in the Bullock and Johnson cases, it could have been no less so here. Therefore this assignment of error is without merit.

THE SUPPLEMENTAL JUDGMENT
Following the sentencing of Wilcher and before the defense's motion for a new trial, the trial judge stated into the record that he would like to make an additional ruling concerning the sentence he had just imposed:
"It will be considered in addition to the ruling of the court." The judge then ruled: "It is the sentence of this court that the sentence now imposed upon you be consecutive to the sentence or sentences imposed in the Scott County case." That occurred on September 15, 1982, the final day of trial. On September 16, Wilcher's attorney filed a petition for appeal. On September 23, the trial judge entered what was styled "Supplement Judgment." In that supplemental ruling the trial judge attempted to explain his previous ruling concerning Wilcher's sentence. The ruling held that should Wilcher's first death sentence be somehow reduced to life imprisonment that it was the intention of the court that the more severe penalty be carried out.
In Dunavant Enterprises v. Ford, 294 So.2d 788 (Miss. 1974). This Court held that once a final decree is entered and an appeal is perfected the trial court no longer has jurisdiction over the cause. In the instant case, the trial court entered an order granting appeal on September 16, 1982. On the same day Wilcher filed an affidavit of poverty to avoid having to post an appellate bond. Therefore, under the holding in Dunavant Enterprises, the trial court was without authority to enter the supplemental judgment and that judgment is of no effect. Regardless, the supplemental judgment was pure surplusage and has no practical effect upon the verdict or sentence in this case and therefore does not require that we reverse.
Based on all of the foregoing, we hereby affirm Bobby Glen Wilcher's conviction of capital murder of Katie Moore and likewise affirm the sentence of death imposed upon him for the commission of that crime.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and PRATHER, J., concur.
ROBERTSON, J., concurs in part and dissents in part.
HAWKINS, J., dissents.
ROY NOBLE LEE, P.J., and BOWLING and SULLIVAN, JJ., not participating.

APPENDIX A
DEATH PENALTY CASES AFFIRMED BY THIS COURT:

Dufour v. State, 453 So.2d 337 (Miss. 1984).

*738 Billiot v. State, 454 So.2d 445 (Miss. 1984).

Neal v. State, 451 So.2d 743 (Miss. 1984).

Booker v. State, 449 So.2d 209 (Miss. 1984).

Wilcher v. State, 448 So.2d 927 (Miss. 1984).

Caldwell v. State, 443 So.2d 806 (Miss. 1983).

Irving v. State, 441 So.2d 846 (Miss. 1983), and 361 So.2d 1360 (Miss. 1978).

Tokman v. State, 435 So.2d 664 (Miss. 1983).

Leatherwood v. State, 435 So.2d 645 (Miss. 1983).

Hill v. State, 432 So.2d 427 (Miss. 1983).

Pruett v. State, 431 So.2d 1101 (Miss. 1983).

Gilliard v. State, 428 So.2d 576 (Miss. 1983).

Evans v. State, 422 So.2d 737 (Miss. 1982).

King v. State, 421 So.2d 1009 (Miss. 1982).

Wheat v. State, 420 So.2d 229 (Miss. 1982).

Smith v. State, 419 So.2d 563 (Miss. 1982).

Edwards v. State, 413 So.2d 1007 (Miss. 1982).

Johnson v. State, 416 So.2d 383 (Miss. 1982).

Bullock v. State, 391 So.2d 601 (Miss. 1980).

Reddix v. State, 381 So.2d 999 (Miss. 1980).

Jones v. State, 381 So.2d 983 (Miss. 1980).

Culberson v. State, 379 So.2d 499 (Miss. 1979).

Gray v. State, 375 So.2d 994 (Miss. 1979).

Jordan v. State, 365 So.2d 1198 (Miss. 1978).

Voyles v. State, 362 So.2d 1236 (Miss. 1978).

Washington v. State, 361 So.2d 61 (Miss. 1978).

Bell v. State, 360 So.2d 1206 (Miss. 1978).
DEATH PENALTY CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:

Dycus v. State, 440 So.2d 246 (Miss. 1983).

Edwards v. State, 441 So.2d 84 (Miss. 1983).

Coleman v. State, 378 So.2d 640 (Miss. 1979).
DEATH PENALTY CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:

Cannaday v. State, 455 So.2d 713 (Miss. 1984).

Williams v. State, 445 So.2d 798 (Miss. 1984).

Wiley v. State, 449 So.2d 756 (Miss. 1984).
HAWKINS, Justice, dissenting:
I respectfully dissent, as to the refusal of the trial court to grant defense instruction D-44, quoted in the majority opinion.
Wilcher's testimony that some third person named Gene Melton murdered the women, and that his participation was limited to assisting Melton following the killing, is preposterous to me under the record of this case.
Yet, under our system of laws and court procedure, he was entitled to have his contention presented to the jury no matter how strange it might appear. I cannot agree with the majority that an instruction on accessory after the fact was improper.
In my view, the principle is so well established that I will simply quote 23A C.J.S. Criminal Law, § 1199, pp 509-511:
"... where there is evidence in support of any defense offered by accused, which raises an issue of fact favorable to him, the court should present the issue by an affirmative instruction which fairly and fully declares the law applicable thereto, including the defining and explaining of the elements of the defense."
Nor can I agree that instruction D-44 was covered by other instructions given by *739 the circuit judge, broad and liberal though they are.
ROBERTSON, J., joins this opinion.