# COURT OF APPEALS 1/31/97

## OF THE

## STATE OF MISSISSIPPI

### NO. 94-KA-00959 COA

### CONSOLIDATED WITH

### NO. 95-KA-00597 COA

**ELEKE DAVIS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JOHN L. HATCHER

COURT FROM WHICH APPEALED: COAHOMA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

CHARLES E. WEBSTER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: LAURENCE Y. MELLEN

NATURE OF THE CASE: CRIMINAL-FELONY

TRIAL COURT DISPOSITION: ARMED ROBBERY: SENTENCED TO SERVE A TERM OF
SIX YEARS IN THE CUSTODY OF THE MDOC

BEFORE FRAISER, C.J., BARBER, COLEMAN, McMILLIN JJ.

FRAISER, C.J., FOR THE COURT:

Eleke Davis (Davis) was tried and convicted of armed robbery by a jury in the Coahoma Circuit Court. He was sentenced to serve a term of six years in the custody of the Mississippi Department of Corrections. He appeals his conviction, presenting the following issues for consideration:

> I. THE COURT ERRED IN FAILING TO SUSTAIN THE DEFENDANT'S OBJECTION TO IMPROPER RACIAL COMMENTS MADE TO THE JURY DURING THE FINAL PORTION OF THE STATE'S CLOSING ARGUMENTS AND IN FAILING TO SUSTAIN DEFENDANT'S SUBSEQUENT MOTION FOR MISTRIAL.

> II. DID THE TRIAL COURT LACK JURISDICTION TO REDUCE DAVIS'S SENTENCE?

Eight months after Davis perfected his appeal, the circuit judge reduced his sentence from six years to four years. The trial court denied the state's motion to vacate the amended sentence. Thereafter, the state through its representative, the Attorney General, filed a Petition for Writ of Prohibition and/or Other Appropriate Extraordinary Writ, claiming that the trial court did not have jurisdiction to amend Davis' sentence once he perfected his appeal. We consider the state's petition along with the merits of Davis' appeal.

FACTS

On January 12, 1994 Ronald Bennett (Bennett) was tending his son's pawn shop in Clarksdale, Mississippi. Bennett and his wife were filling in for their son who took the afternoon off to go hunting. Shortly after Bennett and his wife began working, four juveniles entered and left the store several times. Davis was among the group when they reentered the store after Bennett's other customers had left. Davis approached Bennett, who was standing behind the counter, and told him they were interested in buying a used Nintendo game. Davis was standing in front of Bennett, with the counter separating them, while the other three stood at the front of the store. Bennett began writing up a ticket for the Nintendo game as his wife asked whether to put the game in a bag. Bennett testified that "I said, 'Yes,' and she was putting it in a sack, and then all of a sudden from across the counter, the movement and then a hammer on top of my head." When asked who had the hammer, Bennett replied that it was the defendant, Davis. Davis and the other three boys ran from the store, and Bennett was taken to the hospital where he received four stitches in the top of his head.

After being picked up by the police and taken to the station, Davis gave a sworn, tape-recorded statement about his involvement in the crime. Davis stated that he and a friend planned the crime about a month before they actually carried it out. They got some more people to help them. They wanted guns from the pawn shop to use in seeking revenge on another group of boys. Davis stole a hammer from his cousin's house. The following excerpt is from the transcript of the tape of Davis'

statement:

> Davis: And then we all, we said are yall ready to do this, and then we all walked over to the Pawn Shop. First time we went in it was, it was the uh, Mr. Bennett's son. Then we asked him about the gun and he told us to get out cause we don't, he don't suppose to be telling us about guns and money. Then we walked around the building and then we came back and he was gone. His father and uh, wife and one of their friends was in there. So. I came out and told them there three people in there so we waited some more. Then we went in there and waited till the customers and the friend left. Then we told the story like we had money to buy the Nintendo and we didn't have. So we went outside playing like we had money then I walked back in the store. Then I whispered, and then asked them if they was ready. And then Tony said, Tony Covington said you get to (inaudible) and bust him in the head with the hammer and then I, he told me the price was $41.59 and then I said so it is, and I hit him in the head. Then uh, Tony and Cory ran out the store. Cory supposed to be busting the glass on the counter so we could get the guns but they, they ran out, ran out. Then frog grabbed the brick and he was finna hit Mrs. Bennett with the brick but then I told him lets go. Then we ran out the store, ran on the beside Kentucky Fried Chicken and ran over the by Sonic then ran on over to Larry house. Then yall came picked us up.

> Hoskins: Okay. Alright, um when you hit him with the hammer did he say anything?

> Davis: He fell back and he said oh shit, and then Tony started bouncen around. Then him and Cory broke out the store. Cory was supposed to be bustin' the glass so we could get the guns, but they out ran out the store. And then frog grabbed the brick. . . .

> Hoskins: Where the brick was [sic]?

> Davis: I believed he left it in the store. Then he dropped it. which he suppose to be busting Mrs. Bennet in the head with the brick, but I told him not to, then I said let's go. Then we ran up out the store.

At trial, Davis took the stand in his own defense and testified that he lied when he gave the statement to Hoskins. Davis stated that he did not hit Bennett, but one of the other boys did. According to Davis, he agreed to take the blame so the other boys would not get in as much trouble. He claimed that he and the other three made up the story he gave to Hoskins. The jury convicted him of armed robbery.

> I. THE COURT ERRED IN FAILING TO SUSTAIN THE DEFENDANT'S OBJECTION TO IMPROPER RACIAL COMMENTS MADE TO THE JURY DURING THE FINAL PORTION OF THE STATE'S CLOSING ARGUMENTS AND IN FAILING TO SUSTAIN DEFENDANT'S SUBSEQUENT MOTION FOR MISTRIAL.

During the prosecutor's final closing argument, he made the following statements to the jury:

> Now, after yesterday's case, quite frankly I had somebody tell me outside of this

courtroom that you will never get 12 black jurors to convict a black person of a crime against a white person in this county.

Davis objected to that portion of the prosecutor's argument as improper and the trial court overruled the objection. The prosecutor continued, saying:

> That [race] was introduced into that trial. You all heard it introduced into that one, and it doesn't have any place in the trial. This isn't an issue about black and white. This is an issue about 12 jurors who took an oath to follow the law and apply it to the evidence that you have heard in this case. . . .

After the jury retired to deliberate, Davis moved for a mistrial because of the prosecutor's comments on race. The trial court denied the motion for mistrial. On appeal, Davis asserts that the trial court erred in failing to sustain his objection and grant a mistrial because of the prosecutor's improper comments. He relies on the case of *Herring v. State*, 522, So. 2d 745, 746 (Miss. 1988), in which the prosecutor directly addressed specific jury members and berated the jury about their racial makeup and the effect it could possibly have on the outcome of the case. *Id.* The prosecutor admonished the jury, telling them that the black members of the jury would be unable to vote against a black defendant. *Id. Herring* is distinguishable from this case. Unlike the prosecutor in *Herring*, the prosecutor in the present case did not directly address specific members of the jury to whom he was speaking or berate them into deciding the case simply because of their race. In fact, he did just the opposite, telling them that race had no part in the decision-making process. In *Herring*, the prosecutor went on and on about the jury's racial make-up and its inevitable limitations upon justice. *Id.* In the case sub judice, the prosecutor made the short and simple point to the jury that race had no place in the trial.

In *Herring,* the court sustained an objection to the prosecutor's argument, but denied a motion for mistrial. On appeal, the Mississippi Supreme Court stated that the trial court's action in sustaining the objection, the jury's ability to disregard the comment, and the overwhelming evidence of guilt negated any need for reversing Herring's conviction and sentence. *Herring*, 522 So. 2d at 748. Nonetheless, the court made it clear that interjection of race into argument is improper and is to be condemned. *Id.* The court pointed out, however, that the cases condemning comments on race were based on the prosecutor's action in urging of conviction on the basis of the defendant's race. *Id.* We agree that the interjection of race into closing argument in an effort to persuade the jury or ignite passion or prejudice is clearly improper. In this case, however, the prosecutor simply made the point that race should not be a factor in the jury's decision. It is the better practice to leave all comments about race outside the courtroom. While the prosecutor's action was not reversible error in this case, we caution against the use of any comment about race. In this case the jury had overwhelming proof of Davis's guilt, negating the necessity for reversal. *Herring*, 522 So. 2d at 748.

## II. DID THE TRIAL COURT LACK JURISDICTION TO REDUCE DAVIS'S SENTENCE?

After the verdict, the trial court judge sentenced Davis to serve six years in the custody of the Mississippi Department of Corrections (MDOC). Davis petitioned the court to reduce his sentence. After seeking such relief, but before the judge ruled on his request, Davis perfected his appeal, challenging the conviction. The sequence of events surrounding the trial court's action subsequent to

the conviction and original sentence are as follows:

1) August 11, 1994 Davis was found guilty of armed robbery. 2) August 17, 1994 Davis filed his motion for new trial or in the alternative judgment notwithstanding the verdict. August 22, 1994 the trial court judge denied the motion. 3) September 8, 1994 a sentencing hearing was held, and Davis was sentenced to six years in the custody of the MDOC. 4) September 13, 1994 Davis filed a motion to reconsider his sentence. 5) September 21, 1994 Davis perfected his appeal to the Mississippi Supreme Court before the trial judge ruled on his motion to reduce sentence. 6) May 9, 1995, more than eight months after Davis filed his motion, the trial judge held a hearing on the motion to reconsider his sentence and by amended judgment dated May 11, 1995, reduced the sentence to four years in the custody of the MDOC. The district attorney moved to vacate the amended judgment on the grounds that the court lacked jurisdiction to render it. This motion was denied by the trial judge.

The state, acting through the Attorney General then filed a petition for writ of prohibition or other extraordinary writ. A panel of three supreme court justices considered the petition and ordered that the motion be considered with the merits of Davis's appeal. Davis's case and the state's motion were subsequently assigned to this court for consideration and disposition. The state's motion is considered under the authority granted in rule 21 of the Mississippi Rules of Appellate Procedure, which states, "[t]he Court of Appeals shall issue writs and other process necessary for the exercise and enforcement of its jurisdiction. . . ." M.R.A.P. 21(b). A writ of prohibition "may issue as an aid to the appellate process by superior courts to inferior courts to prevent action by an inferior court or judge which cannot be remedied on appeal." *State v. Maples*, 402 So. 2d 350, 352 (Miss. 1981). Writs of prohibition are remedial writs utilized by a superior court to prohibit certain action by a lower court. *State v. Maples*, 402 So. 2d at 352. In the case sub judice, the state petitioned the supreme court and requested that the trial judge be prohibited from reducing Davis's sentence because the trial court lost jurisdiction of the case when Davis was originally sentenced and perfected his appeal.

In its petition, the state argued that the trial court lost jurisdiction of Davis's case when Davis perfected his appeal. In *Smith v. State*, 445 So. 2d 227, 232 (Miss. 1984), the Mississippi Supreme Court stated that the lower court was without jurisdiction to hear a motion to set aside the jury verdict after defendant perfected his appeal to the supreme court. Subsequently, the court in *Wilcher v. State*, expounded on that rule and stated:

> This court held that once a final decree is entered and an appeal is perfected the trial court no longer has jurisdiction over the cause. In the instant case, the trial court entered an order granting appeal on September 16, 1982. On the same day Wilcher filed an affidavit of poverty to avoid having to post an appellate bond. Therefore, under the holding in *Dunavant Enterprises*, the trial court was without authority to enter the supplemental judgment and that judgment is of no effect.

*Wilcher v. State*, 455 So. 2d 727, 737 (Miss. 1984), *cert. denied*, 470 U.S 1034 (1985). The Mississippi Supreme Court reiterated its holding in *Wilcher* in *Grubb v. State*, 584 So. 2d 786, 790 (Miss. 1991), stating, "once a final [judgment] is entered and an appeal is perfected [to the Supreme Court], the trial court no longer has jurisdiction over the cause." *Grubb*, 584 So. 2d at 790 quoting *Wilcher v. State*, 455 So. 2d 727, 737 (Miss. 1984). The Mississippi Supreme Court specifically

addressed the issue of a circuit court's ability to amend a defendant's sentence after appeal in *Harrigill v. State*, 403 So. 2d 867, 868-69 (Miss. 1981):

> [O]nce a case has been appealed from the circuit court to this Court, the circuit court loses jurisdiction to amend or modify its sentence. If the case is affirmed, the lower court is issued a mandate to perform purely ministerial acts in carrying out the original sentence. [O]nce a case has been terminated and the term of court ends, a circuit court is powerless to alter or vacate its judgment.
>
> When a criminal case has been completed and the term of court ends, unless the circuit court has deferred sentence, or placed the defendant upon a suspended sentence and retained jurisdiction for this specific purpose as authorized by statute, the power of the circuit court to alter or amend its sentence is terminated.
>
> Following conviction and final termination of a case, however, neither the circuit court nor this Court has power to simply review a case and decide whether or not the original sentence should be amended in any way.

*Id.* Section 47-7-33 of the Mississippi Code allows a circuit or county court to suspend a sentence and place a defendant on probation, and section 47-7-37 grants continued jurisdiction to the county or circuit court to revoke any or all of the suspension or probation and impose a sentence on the defendant. However, in Davis's case the trial judge could not retain jurisdiction to amend the sentence by invoking section 47-7-33 because the crime was one carrying a potential life sentence, excluding Davis from those potentially eligible for probation or suspension. M.C.A. § 47-7-33 (Rev. 1993).

In the case sub judice, the trial judge responded to the state's petition for writ of prohibition, and stated that the case was distinguishable from previous case law because Davis filed his motion to reduce sentence before perfecting an appeal. The trial judge stated that the circuit court automatically retained jurisdiction when Davis filed his motion to reconsider his sentence. The trial court's conclusion does not comport with applicable rules of appellate procedure. Rule 4(e) of the Mississippi Rules of Appellate Procedure (M.R.A.P.) addresses post-trial motions in criminal cases and states:

> If a timely motion under the Uniform Criminal Rules of Circuit Court is filed in the trial court by the defendant: (1) for judgment of acquittal notwithstanding the verdict of the jury, or (2) for a new trial under Rule 5.16, the time for appeal for all parties shall run from the entry of the order denying such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. Notwithstanding anything in this rule to the contrary, in criminal cases the 30 day period shall run from the date of the denial of any motion contemplated by this subparagraph, or from the date of imposition of sentence, whichever occurs later.

In this case, a motion for a JNOV or alternatively a new trial was made on August 17, 1994. This motion was denied on August 22, 1994. On September 8, 1994 the trial judge sentenced Davis to six years in the MDOC. According to Rule 4(e), Davis's 30 days in which to perfect an appeal began running from the date of imposition of his sentence. The trial judge in his response to the state's petition contends that Davis's motion to reduce his sentence had the same effect as a motion for JNOV or a motion for a new trial, thus tolling the start of the 30 day appeal time limit. The rule does not support the trial judge's position. Rule 4(e) only specifies two post-trial motions that delay the appeals process, and Davis's motion to reduce his sentence is not one of them. The rule specifies that in criminal cases, the 30 day time limit begins on the date of imposition of sentence or the date of the denial of the motion for JNOV or motion for new trial. Davis's 30 days began to run the date of imposition of his sentence.

The trial judge states that Davis had a property interest in his right to appeal as well as his right to file a post-trial motion. According to the trial judge's suggestion, Davis has to forego a motion to reconsider his sentence in order to file his appeal on the merits within the 30 day time limit, thus depriving him of his property interest without due process of law. However, the trial judge assumes that Davis's post-trial motion to reduce his sentence cannot or will not be considered before the perfection of appeal. The rules are clear that a defendant has 30 days from the time of sentencing or denial of a motion for JNOV or new trial, whichever is last. If the 30 day time limit is drawing to a close and the defendant has not received a decision from the trial judge, he can apply for an extension of time for good cause under Rule 4(g):

> The trial court may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time otherwise prescribed by this rule. Any such motion which is filed before expiration of the prescribed time may be granted for good cause and may be ex parte unless the court otherwise requires.

M.R.A.P. 4(g). In this case, the trial judge did not rule on Davis's motion to reduce sentence until more than eight months after its filing.

Davis's arsenal was not without legal weapons designed for relief. He could have petitioned for a writ of mandamus to compel the trial judge to rule on his motion within the 30 day appellate time limit. He could have utilized M.R.A.P. Rule 21 to petition the Mississippi Supreme Court or this court to issue a writ of mandamus to the trial judge, compelling him to rule on Davis's motion to reduce his sentence. "The writ of mandamus is one of the ancient, extraordinary writs designed to compel action. . . ." *Doss v. State*, 324 So. 2d 253, 254 (Miss. 1975). In *State v. Maples*, 402 So. 2d 350, 352 (Miss. 1981), the supreme court stated that, "this Court has announced a different rule pertaining to writs of mandamus by holding that the Supreme Court has original jurisdiction to entertain a writ of mandamus to compel a trial judge to act in a matter pending before him." "The writ of mandamus is an aid to the appellate process because a superior court directs an inferior court to take some affirmative action so the action of the inferior court may be reviewed on appeal." *Id.* at 353. In *Woods v. Lee*, 390 So. 2d 1010, 1011 (Miss. 1980), the appellant filed a motion notwithstanding the verdict or in the alternative a motion for a new trial, and the trial judge took the

motions under advisement for over a year. The Mississippi Supreme Court stated that the appellant's recourse was by writ of mandamus to compel the trial judge to rule on the matter. *Id.*

The trial judge implies that extraordinary circumstances warranted reconsideration of Davis's sentence. An examination of those circumstances reveals that Davis was thirteen years old when he was convicted of armed robbery and sentenced to six years in the custody of the MDOC. During the sentencing hearing, the trial judge and the attorneys discussed the appropriate statutory limitations upon the circuit court. Section 99-3-79 of the Mississippi Code sets the maximum sentence for armed robbery at life imprisonment if the jury so finds. Otherwise, the circuit court can sentence the defendant to no less than three years. Additionally, section 47-7-3 of the Mississippi Code states that a defendant convicted of armed robbery and sentenced to more than ten years cannot be eligible for parole until the defendant has served the first ten years. If the defendant's sentence is less than ten years, he shall not be eligible for parole. The trial judge took these statutory guidelines into consideration at Davis's sentencing, as well as considering the fact that the three other defendants involved in the robbery were each sentenced to fifteen years each, with a possibility of parole after serving one fourth of their time. With all of this information in front of him, the trial judge sentenced Davis to six years in the custody of the MDOC. Nearly one year later, the trial judge rendered an amended judgment reducing Davis's sentence to four years because of his age and the possibility that the other defendants might only have to serve one fourth of their fifteen year sentence. With the same information in front of him at the original sentencing hearing, there was no reason the trial judge could not have originally sentenced Davis to four years. There were no extraordinary circumstances warranting reconsideration of Davis's sentence. Perfection of the appeal divested the trial judge of jurisdiction to reduce Davis's sentence. The state's petition for writ of prohibition is granted, and the trial judge is o rdered to vacate the amended sentence and reinstate the original sentence of six years in the custody of the MDOC.

**THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY IS AFFIRMED. THE STATE'S PETITION FOR WRIT OF PROHIBITION AND/OR OTHER APPROPRIATE EXTRAORDINARY WRIT IS GRANTED AND THE COAHOMA COUNTY CIRCUIT JUDGE IS ORDERED TO VACATE THE AMENDED SENTENCE OF FOUR YEARS AND REINSTATE THE ORIGINAL SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. COSTS TAXED TO COAHOMA COUNTY.**

**BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**