Kenneth W. WHEAT,
Petitioner-Appellee,
Cross-Appellant,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, et al., Respondents-Appellants, Cross-Appellees.

No. 85–4590.

United States Court of Appeals,
Fifth Circuit.

June 27, 1986.

Rehearing and Rehearing En Banc Denied Aug. 18, 1986.

---

Edwin L. Pittman, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., White & Morse, Jackson, Miss., William S. Boyd, III, Gulfport, Miss., for respondents-appellants, cross-appellees.

Gerald F. Smith, Gulfport, Miss., Robert E. Morin, Rockville, Md., Stephen B. Bright, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before GEE, REAVLEY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this federal habeas action, the respondents, Morris Thigpen, Commissioner of the Mississippi Department of Corrections, and others (collectively the State), appeal the district court's order vacating the petitioner's death sentence. The petitioner, Kenneth William Wheat, appeals the district court's denial of relief as to the guilt-innocence phase of his trial. We affirm the order of the district court in all respects.

## I.

A Mississippi jury found Wheat guilty of capital murder in 1980 and imposed the death penalty. Wheat's lawyers took a direct appeal to the Mississippi Supreme Court and filed an opening brief before Wheat dismissed them. Based on Wheat's opening brief and the State's response, the Mississippi Supreme Court affirmed the conviction and sentence. *Wheat v. State*, 420 So.2d 229 (Miss.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1507, 75 L.Ed.2d 936 (1983). Following the United States Supreme Court's denial of certiorari in the direct appeal, another set of lawyers filed, on Wheat's behalf, a Petition for Leave to File a Writ of Error Coram Nobis with the Mississippi Supreme Court, raising several issues previously raised in the direct appeal and raising several issues not raised in the direct appeal. The court denied the petition on the ground that Mississippi law procedurally barred all the issues raised by Wheat. The court held that Mississippi law barred the issues previously raised because Wheat had previously litigated them and that Mississippi law barred the issues not previously raised because Wheat waived them by not raising them on direct appeal. *Wheat v. Thigpen*, 431 So.2d 486 (Miss. 1983).

After the Mississippi Supreme Court denied his Petition for Leave to File a Writ of Error Coram Nobis, Wheat filed a Petition for Writ of Habeas Corpus with the United States District Court for the Southern District of Mississippi. The district court conditionally granted the writ as to the sentencing phase of the trial, conditioned on Mississippi conducting a new sentencing hearing or deciding to impose a sentence less than death. The district court found no merit to any of Wheat's claims attacking the guilt-innocence phase of the trial and refused to grant the writ as to that portion of the trial. The State appeals the partial conditional grant of the writ of habeas corpus, and Wheat appeals the denial of the writ as to the guilt-innocence phase of his trial.

## II.

We address first the State's complaints about the district court's ruling on the sentencing phase of Wheat's state court trial. The court ruled that the prosecutor's closing argument at the sentencing phase of the trial violated the eighth amendment. While the state does not dispute the court's conclusion that the prosecutor's argument violated the eighth amendment, the State argues: (1) that the district court erred in finding that it could reach the eighth amendment question and (2) that the district court erred in not finding that comments made by defense counsel invited the prosecutor's error.

### A.

The State argues that the federal district court could not reach the eighth amendment question because Mississippi procedure barred the raising of claims, in a post-conviction proceeding, not previously raised in the direct appeal. The State further argues that its procedural bar rule is entitled to respect as an "independent and adequate state ground" and that the district court violated this principle by reaching the issue raised by the prosecutor's closing argument.

■■■ The Supreme Court "has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power." *Francis v. Henderson*, 425 U.S. 536, 539, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149, 152 (1976) (citing *Fay v. Noia*, 372 U.S. 391, 425–26, 83 S.Ct. 822, 841–42, 9 L.Ed.2d 837 (1963)). One way the Court implements these considerations and concerns is by prohibiting the federal courts from reviewing state decisions grounded on an independent and adequate state ground. An independent and adequate state ground may be a rule either of state substantive law or state procedural law. *Henry v. Mississippi*, 379 U.S. 443, 446, 85 S.Ct. 564, 566, 13 L.Ed.2d 408, 412 (1965). The Supreme Court has specifically held that a federal court may

not review a habeas petitioner's federal claims when the state courts have declined to pass on the claims because of an independent and adequate state procedural ground, absent a showing of cause and prejudice. *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 801 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 608 (1977). Thus, a state procedural rule which requires a defendant to raise all his issues for relief on direct appeal will prevent a defendant from raising in federal court issues he did not raise on direct appeal.

> Applying *Sykes* in this setting accrues the dual advantage of discouraging defense attorneys from omitting arguments in preparing appeals with the intent of saving issues for federal habeas corpus consideration and encouraging state appellate courts to enforce state procedural rules strictly, thereby reducing the possibility the federal court will decide the constitutional issue without the benefits of the state's views.

*Clark v. Texas*, 788 F.2d 309, 310–11 (5th Cir.1986) (quoting *Ford v. Strickland*, 696 F.2d 804, 816 (11th Cir.) (en banc), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983)).

■■■ There is, however, at least one exception to the rule that a federal court will not reach an issue which the state courts refused to reach due to a procedural default. The Supreme Court has repeatedly stressed that a state procedural rule is not entitled to respect as an adequate and independent state ground unless the procedural rule is "strictly or regularly followed." *Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824, 832 (1982); *Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766, 769 (1964); *see also James v. Kentucky*, 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346, 353 (1984) (only state procedural rules that are "firmly established and regularly followed ... can prevent implementation of federal constitutional rights."). As the Court recently stated:

"State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Hathorn*, 457 U.S. at 263, 102 S.Ct. at 2426, 72 L.Ed.2d at 833. Additionally, the state procedural rule must be "clearly announced to defendant and counsel." *Henry v. Mississippi*, 379 U.S. 443, 448 n. 3, 85 S.Ct. 564, 567 n. 3, 13 L.Ed. 408, 413 n. 3 (1965). If the state does not clearly announce the procedural rule or the state courts do not strictly or regularly follow the procedural rule, then the federal courts may reach the issue the state court refused to address. *Barr*, 378 U.S. at 149, 84 S.Ct. at 1736, 12 L.Ed.2d at 769.

■ The State argues that Mississippi procedure prevents a defendant from raising, in a post-conviction proceeding, claims which the defendant did not raise on direct appeal. While Wheat admits that he did not raise the claim concerning the prosecutor's closing argument on direct appeal, he argues that Mississippi procedure, at the time of his appeal, did not prohibit the raising of claims for the first time in a post-conviction proceeding. Wheat further argues that, if Mississippi procedure did prohibit the raising of claims for the first time in a post-conviction proceeding, Mississippi did not strictly or regularly enforce

the rule and did not clearly announce the rule to defendants and their counsel. We now turn to the question of whether the procedural bar applied by the Mississippi Supreme Court prevents federal review of Wheat's claim of improper prosecutorial argument.

Post-conviction review in Mississippi historically occurred through use of a writ of error coram nobis,[1] filed with the Mississippi Supreme Court. While the State cites numerous cases for the proposition that the scope of review on writ of error coram nobis is narrow and that the court will not address issues which could or should have been litigated at trial or on direct appeal, few of the cases are from the twenty-year period preceding Wheat's petition. Additionally, some cases indicate that the court will review constitutional claims on writ of error coram nobis although the defendant did not raise them on direct appeal.[2] Furthermore, the practice of the Mississippi Supreme Court indicates that in death penalty cases the court does not consistently follow the narrow scope of review outlined in some of its opinions.

In the years immediately preceding Wheat's appeal the Mississippi Supreme Court routinely reviewed claims made for the first time on writ of error coram nobis.[3]

1. While uncertainty existed at the time of Wheat's petition for post-conviction relief as to the proper procedure for applying for relief, one accepted procedure was the writ of error coram nobis. *Edwards v. Thigpen*, 433 So.2d 906, 907 n. 1 (Miss.1983).

2. In *Phillips v. State*, 421 So.2d 476, 483 (Miss. 1982), the Mississippi Supreme Court stated that the writ of error coram nobis may be used to raise "constitutional defects." In *In re Petition of Broom*, 168 So.2d 44, 48 (Miss.1964), the court stated that the writ of error coram nobis "is also available to correct an infringement of the constitutional rights of an accused."

3. In the two decades preceding Wheat's petition the Mississippi Supreme Court repeatedly ignored its rule prohibiting the raising of claims for the first time on writ of error coram nobis, if in fact the rule existed. In *Culberson v. State*, 412 So.2d 1184 (Miss.1982), the court considered an ineffective assistance of counsel claim and several other claims raised on a writ of error coram nobis. The petitioner had not raised the claims on his direct appeal. Yet the

court considered all the petitioner's claims and granted the writ to allow the petitioner an evidentiary hearing on his ineffective assistance of counsel claim. As the State correctly points out, Mississippi reviews claims of ineffective assistance of counsel differently than other claims, *see Read v. State*, 430 So.2d 832 (Miss. 1983), and allows a petitioner to raise such claims in a post-conviction proceeding; however, the State ignores the fact that the court also reviewed all the other claims presented by the petitioner for the first time on writ of error coram nobis.

In *In re Jordan*, 390 So.2d 584 (Miss.1980), the Mississippi Supreme Court considered and rejected claims raised for the first time on writ of error coram nobis. The court considered the issues so the petitioner could exhaust his state remedies and proceed with a federal habeas corpus action. Had the court desired to assert a procedural bar in an effort to prevent federal review of the petitioner's claims, *Jordan* provided a clear-cut case for assertion of the bar. Yet the court failed to assert any procedural bar and reviewed the merits of the claims so as to allow

The first case where the court expressly declares that it will not consider claims raised for the first time on writ of error coram nobis is the case involving Wheat's petition. *Wheat v. Thigpen*, 431 So.2d 486 (Miss.1983). In a series of cases following *Wheat* the court repeatedly held that it would not consider claims raised for the first time on writ of error coram nobis. *King v. Thigpen*, 441 So.2d 1365 (Miss. 1983); *Evans v. State*, 441 So.2d 520 (Miss. 1983); *Smith v. State*, 434 So.2d 212 (Miss. 1983); *Edwards v. Thigpen*, 433 So.2d 906 (Miss.1983). Yet, on at least one occasion following the court's announcement that it would not consider claims not raised on the direct appeal, the court has addressed the merits of a claim raised for the first time after the direct appeal. *Caldwell v. State*, 481 So.2d 850 (Miss.1985).[4] We also note that the State admits in a brief filed in another case that the Mississippi Supreme Court "has in the past considered with few exceptions all claims, either on direct appeal or in a post-conviction petition, presented to it." Respondent's Response to Application for Leave to File a Petition for Writ of Error Coram Nobis and/or Writ of Habeas Corpus at 22, *Edwards v. Thigpen*, 433 So.2d 906 (Miss.1983).[5] We are

the petitioner federal review of his claims. The court acted similarly in *Bell v. Watkins*, 381 So.2d 118 (Miss.1980). In *Bell* the court again considered claims raised for the first time on writ of error coram nobis in order to allow a petitioner to exhaust his state remedies and proceed with a federal habeas corpus action. In *Fondren v. State*, 199 So.2d 625 (Miss.1967), when considering a writ of error coram nobis, the court reached the merits of a claim not assigned as error on the direct appeal and granted relief to the petitioner.

Additionally, two other federal district courts sitting in Mississippi have held that the same procedural bar invoked by the Mississippi Supreme Court in the instant case did not constitute an adequate and independent state ground. *Pruitt v. Thigpen*, No. EC84-31-LS-D (N.D.Miss. Nov. 21, 1984); *Edwards v. Thigpen*, 595 F.Supp. 1271, 1278 (S.D.Miss.1984) ("In this case the petitioner had every reason to expect that the Mississippi Supreme Court would address the merits of his petition for a writ of error coram nobis and should not be unjustly penalized for the Mississippi Supreme Court's announcement of a change in its procedural policy with regard to death penalty cases."). While we do not claim that our review of cases where the Mississippi Supreme Court reviewed claims raised for the first time on writ of error coram nobis is exhaustive, we believe our review sufficiently indicates that the court did not "strictly or regularly" follow its procedural bar rule or apply the rule "evenhandedly" when considering Wheat's petition.

4. Following the United States Supreme Court's vacation of his death sentence, Caldwell filed a motion with the Mississippi Supreme Court requesting that the court vacate or set aside his conviction for capital murder. The court proceeded to consider issues not raised on direct appeal and overruled the motion.

5. Wheat introduced the State's Response in *Edwards* as an exhibit below. In the Response the State noted that in five of the first six capital cases to reach the federal courts, the federal court granted habeas corpus relief based on federal claims which the defendants had raised for the first time in state court in a petition for writ of error coram nobis. After stating that "the time has come in light of certain events which have transpired within recent history for this Court to review its chartered course in capital cases and to reconsider certain concepts," the State urged the Mississippi Supreme Court to apply procedural bars as a means to prevent federal review of those constitutional claims first presented on petition for writ of error coram nobis in order to prevent a "Crash Upon the Rocky Shores of the Federal Judiciary." The State urged the court to recognize that "the power to halt this trend and recoup control ... waits, but to be firmly seized" and that "should [the Mississippi Supreme Court] continue to enforce the 'no holds barred' concept embodied in the *Irving-Culberson-Landy* line of cases [ruling on the merits of claims] ... it will ultimately abdicate its position as the Supreme Court of the State of Mississippi and vest that authority in the United States Court of Appeals for the Fifth Circuit...."

While we understand the State's desire to shorten the lengthy litigation following capital sentences, the State ignores United States Supreme Court precedent when it urges the Mississippi Supreme Court to apply, in order to prevent federal review, procedural bars which the court has not clearly announced or strictly or regularly followed. The court's announcement of procedural bars will prevent federal review only in those cases arising after the announcement of the bar. We also note that the purpose of procedural bars is to force parties, for sound reasons, to raise their claims in a timely manner, not to completely eliminate those claims. However, the State seems to be more interested in the latter purpose.

The State is saying we should hold Evans' claims procedurally barred, not because such

therefore persuaded that the Mississippi Supreme Court had not clearly announced or strictly or regularly followed the procedural bar at the time of Wheat's direct appeal. Thus, no independent and adequate state grounds exist to prevent federal review of Wheat's claim concerning the prosecutor's closing argument.

### B.

■ The State next argues that the district court erred in not excusing the prosecutor's unconstitutional argument because

> would promote the interests of justice, but rather that such would pull the rug out from under Evans when he ultimately seeks federal review of his case. The State not only asks that we refuse to address Evans' claims on their merits but unashamedly further seeks our aid in avoiding litigation of Evans sixteen *federal* constitutional claims in any *federal* court.
>
> *Evans v. State*, 441 So.2d 520, 531 (Miss.1983) (Robertson, J., dissenting) (emphasis in original) (footnote omitted). The three dissenters in *Evans* also found the majority's new-found "affection for procedural bars to be particularly unseemly" because the State made an "undisguised demand that this Court assume an adversary position" after the federal courts vacated seven death sentences due to constitutional violations. *Id.* at 531–32. We also share the dissenters' concerns. The State should be concerned with implementing procedural bars so that defendants will raise possible constitutional violations at trial and on direct appeal, thereby conserving judicial resources and resolving claims when the evidence remains fresh and readily available. The State should not be concerned with eliminating a defendant's chance to raise constitutional claims without first telling the defendant when he must raise his claims or else waive them.

**6.** Wheat's counsel argued as follows:

> I approached you yesterday and told you how heavy a burden that I felt. If I felt a heavy burden yesterday, I feel like I have the weight of the world on my shoulders today.
>
> You know, I can't imagine what it would be like, truthfully, to be in your position. I guess, maybe, you can imagine what it would be like to be in my position, knowing that what you say may actually have a great determination whether a man lives or dies. I can't imagine what it would be like to sit on a jury like you are, and have to make a decision as to whether a man is killed or not. I truthfully can't. I don't know if it's hard, never having been in the position, and I just can't imagine it.

certain comments made by defense counsel allegedly "invited" the prosecutor's error. Wheat's counsel in argument sought to impress on the jury the gravity of their responsibility. His counsel further urged the jury not to impose the death penalty because a possibility existed that Wheat did not commit the murder and because, if the jury imposed the death sentence and the State executed Wheat, and the police later found the real culprit, the death sentence could not be reversed.[6] The prosecutor responded to the closing argument of

> You know, what you decide here today when you go out of here, when you come back, the decision if he should be killed, somewhere, it may take—truthfully the way appeals go, it may take two or three years. But someday, just as sure as we're here now, they'll take that man over there, and they'll walk him into a little gray-looking chamber— I've seen it before—a little eight-sided thing, about, maybe, a little bit bigger than that witness box, and there's a metal chair that's got leather straps to it, and they'll strap him in there. And it's got glass where people can look through it. And they have a man who stands over behind there where people can't see him, and he pulls the little lever; and these little tablets drop in there, and it makes a gas, cyanide gas. And it comes into there, and they have things, I think, strapped to the body to check the heartbeat, and so forth. They stay in there until they're dead, and then they bring them out. Someday, I want you to understand that; someday—. I'm not doing this to be morbid with you. I'm doing it to make sure that you really understand the gravity of the thing.
>
> \*  \*  \*  \*  \*  \*
>
> Now, I said all of that to say this: You can be wrong about it. People can be wrong. It's just that simple. No matter what, no matter what a thing looks like, you can be wrong about it. There is no question that you can be wrong about it.
>
> Now, you have said by your verdict that you believe that he killed him, and that you have no reasonable doubt of it. But consider, what if? Consider that possibility. What if I'm wrong? What if it really wasn't him. If you come back with a sentence of death, it can never be reversed. Once he's dead, he's gone. He'll never be brought back if you're wrong. But what if you're wrong? What if there is a man, really, out there. That man who I argued about yesterday. What if he really exists? Consider that possibility. If you haven't —if you let the thought come into your mind, consider it. What if he exists? You can never bring that man back if you kill him.

Wheat's counsel by outlining the process of state and federal appellate and habeas review.[7] The prosecutor also remarked: "[J]ust remember this, if your verdict is that of the death penalty, that's not final." The prosecutor further informed the jury that, if they made a mistake, one of the reviewing courts would send the case back for retrial.

While the State does not attempt to argue that the prosecutor's argument did not violate the Constitution, *see Caldwell v. Mississippi*, 472 U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the State does argue that the comments of Wheat's counsel excuse the violation. We disagree. In *Caldwell*, after finding that the prosecutor's closing argument violated the eighth amendment, the Supreme Court addressed the question of whether the prosecutor's comments were a permissible response to comments made by defense counsel. The Court found that the comments made by defense counsel did not excuse the prosecutor's argument. *Id.* at ——, ——, 105 S.Ct. at 2643–44, 86 L.Ed.2d at 244–45.

The defendant's counsel in *Caldwell*, as did Wheat's counsel, sought to impress on the jury the gravity of their decision. *Id.* at ——, ——, 105 S.Ct. at 2637, 86 L.Ed.2d at 236–37. Defense counsel in *Caldwell* also sought to convey to the jury the impression that their decision would be final: "[H]e has a life that rests in your hands. You can give him life or you can give him death. It's going to be your decision." 472 U.S. at ——, 105 S.Ct. at 2637, 86 L.Ed.2d at 236. The Supreme Court noted that the State could not explain "how the prosecutor's argument was less likely to have distorted the jury's deliberations because of anything defense counsel said."

7. The prosecutor argued as follows:

   And another thing Mr. Stegall said, Kenneth Wheat still gets another chance even if you find that he should suffer the penalty of death. This will not happen tomorrow. It will not happen next. It will not happen next year. Why? Because, in the first place, there will be so many different panels reviewing your decision as to see if you made the right decision. First, His Own Honor here, will review your decision at a later time to see if you've made any error; or if the lawyers made any errors. If the Judge finds that I have committed some type of error in this case, this Judge right here has the authority to grant another trial. If he thinks that your verdict is not in accordance with the law, he has a right to grant a new trial, and let twelve more people decide. And if he finds that he's in accordance—in accord with your verdict, then we have nine supreme court justices at our state level who will look at ever[y] word that has been spoken, that this lady has taken down, will be all transcribed into a book form. Ever[y] piece of evidence that you see will go yonder to the Supreme Court, and nine men and with all of their wisdom, and knowledge, and compassion, and mercy, and understanding, and legal experience will look at all of this and determine whether Kenneth William Wheat got a fair trial at the hands of you twelve people in Harrison County, Mississippi.

   Then if they decide, they have a right to send it back to another jury to look at if they think we committed error in this case. If they find that no error was committed, then he has a right to go all the way to the United States Supreme Court. And this doesn't cost him one dime. Our system provides him this relief at no cost to him. And he goes all the way to the Supreme Court in Washington, where nine more men will have all of the same evidence to look at and determine whether this Judge here, or those nine judges in Jackson made a mistake. And if they find that he did, then they will send it back for a new trial. Or they can go the Federal Court route after that, and then have Federal Judges to look at and see if all the evidence was presented fairly and impartially.

   So, you see, Ladies and Gentlemen, it's not like he will be killed tomorrow. Mississippi hadn't had anyone executed in a long time.

   \* \* \* \* \* \*

   Again, I say to you, and then I'll leave it to you, just remember this, if your verdict is that of the death penalty, that's not final. There's so many more people who will look at this case after you have made your decision in this case. Others will look at it, and look at your work, and see if you've made the right decision. And I can assure you, Ladies and Gentlemen, that if one finds that you have not, that they will send him back, and tell us to try it over, because someone made a mistake. BY MR. STEGALL: May It Please The Court, I'm gonna object to that again. He's telling this jury to go ahead and do something even if it's wrong, because if it's wrong, they're gonna send it back. That's not right. I'm gonna object.
   BY THE COURT: I think the argument was allowed—it was opened up on your argument. I'll overrule it.

*Id.* at 2643, 105 S.Ct. at 2644, 86 L.Ed.2d at 244. The court then held that: "Assuming without accepting the ... position that the defense counsel's argument invited error, it did not invite this error." *Id.* at ——, 105 S.Ct. at 2644, 86 L.Ed.2d at 245 (quoting *Caldwell v. State*, 443 So.2d 806, 817 (Miss. 1983) (Lee, J., dissenting)).

The comments made by Wheat's counsel no more invited error than did the comments made by defense counsel in *Caldwell*. Wheat's counsel simply sought to impress on the jury the gravity and finality of their decision, as did defense counsel in *Caldwell*. However, the prosecutor in the instant case responded to comments by Wheat's counsel with an argument which constituted a graver violation of the Constitution than the argument given by the prosecutor in *Caldwell*.[8] Thus, since the Supreme Court held in *Caldwell* that defense counsel's comments did not invite the prosecutor's error, and since Wheat's counsel made nearly identical comments, we find that the prosecutor's argument cannot be excused by defense counsel's comments.

We therefore affirm the portion of the district court's order granting the conditional writ of habeas corpus as to the death sentence.

## III.

We now turn to Wheat's cross-appeal. Wheat argues that the district court committed two errors in finding that Wheat was competent to stand trial in 1980 and that the district court erred in ruling that the state district court properly admitted in evidence two notes authored by Wheat.

## A.

The State violates a defendant's constitutional right to due process if he is tried while legally incompetent. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The State must maintain adequate procedures to insure the defendant's right to be tried while competent. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). "[F]ailure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). If the trial judge received "information which objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings, nor rationally aid his attorney in his defense," the trial judge must make further inquiry into the defendant's competence to stand trial. *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980). If the trial judge does not conduct an inquiry into competency after receiving sufficient information to raise a reasonable doubt as to competency, a procedural due process violation, commonly known as a *Pate* violation, occurs. The habeas petitioner carries the burden of showing that a *Pate* violation occurred by making a clear and convincing showing of the existence of a "real, substantial and legitimate doubt as to [his] mental capacity." *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir.1973) (*Bruce I*).

---

**8.** In *Caldwell* the Supreme Court found unconstitutional the portion of the prosecutor's argument which informed the jury that their decision was not final and that their decision was automatically reviewable by the Mississippi Supreme Court. In the instant case the prosecutor went further and told the jury that, if they made a mistake, a reviewing court would correct it. This type of argument raises to an even greater degree all the concerns expressed by the Supreme Court over leading the jury "to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at ——, 105 S.Ct. at 2639, 86 L.Ed.2d at 239. Arguably, even the dissents in *Caldwell* would have found the prosecutor's argument in the instant case unconstitutional.

> If the prosecutor in this case actually had argued to the jury that it should go ahead and impose the death sentence because it did not really matter—the appellate court would correct any 'mistake' the jury might make in choice of sentence—and if the trial judge had not corrected such an argument, I might well agree that the process afforded did not comport with some constitutional norm related to procedural fairness.

*Id.* at ——, 105 S.Ct. at 2649, 86 L.Ed.2d at 252 (Rehnquist, J. dissenting).

**630**

█ Once the petitioner carries the burden of showing a *Pate* violation, the question then becomes whether the federal district court can now conduct an adequate hearing to retrospectively determine the petitioner's competency at the time of his trial. If the district court cannot conduct a meaningful hearing, the court should grant the writ of habeas corpus. *Drope*, 420 U.S. at 183, 95 S.Ct. at 909, 43 L.Ed.2d at 120. If a meaningful hearing can be held, the district court holds a nunc pro tunc hearing as to the petitioner's competency. The petitioner bears the burden of proving his incompetency by a preponderance of the evidence. *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir.) (*Bruce II*), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1970).

In the instant case, after conducting a hearing, the district court ruled that a *Pate* violation occurred. The State does not challenge the ruling. The district court then proceeded to determine whether it could hold a meaningful nunc pro tunc hearing. After hearing the testimony of lay and expert witnesses and reviewing various medical reports, the court ruled that it could hold a meaningful nunc pro tunc hearing. The court then conducted further hearings and reviewed additional reports and ruled that Wheat was competent to stand trial in 1980. Wheat argues that the court erred (1) in ruling that it could now conduct a meaningful nunc pro tunc hearing and (2) in finding that Wheat was competent to stand trial in 1980.

-1-

"Both the Supreme Court and this Circuit are acutely aware of the hazards connected with retrospective competency hearings ... Nevertheless, this court has repeatedly sanctioned *nunc pro tunc* proceedings where there is sufficient data available to guarantee reliability." *United States v. Makris*, 535 F.2d 899, 904 (5th Cir.1976) (*Makris II*). In *Makris II* we noted that the length of time between the trial and the nunc pro tunc hearing was not determinative and that "the transcript of the trial itself may provide a solid starting point for reliable reconstruction of the facts." *Id.* While we recognize that contemporaneous expert medical evidence often provides the most useful evidence for determining whether a meaningful hearing may be held, we have also stated that "the recollections of non-experts (including the observations of the trial judge) who had the opportunity to interact with defendant during the relevant period may in some instances provide a sufficient base upon which a fact finder may rest his decision that even a belated determination will be accurate." *Id.* at 905. We have also approved the use of experts to aid the district court in determining whether the court may hold a meaningful retrospective hearing. *Martin v. Estelle*, 583 F.2d 1373, 1375 (5th Cir.1978) (*Martin III*). The test for the district court in determining the question of meaningfulness is whether "the quantity and quality of available evidence was adequate to arrive at an assessment that could be labeled as more than mere speculation." *Bruce II*, 536 F.2d at 1057.

Wheat argues that the district court erred in holding that it could now conduct a meaningful nunc pro tunc hearing. We disagree. The district court had before it the medical records covering the seventeen-year period Wheat was incarcerated in New Jersey; New Jersey released Wheat less than one year before his state court trial. The three Mississippi trial judges who participated in Wheat's trial, and the trial of a companion case, testified about their observations of and interactions with Wheat. The court further noted that numerous lay witnesses who observed Wheat around the time of his trial would be available to testify, including police officers, jail officials, penitentiary officials, Wheat's defense counsel, and the district attorney who prosecuted Wheat. The court also relied on the opinions of two experts, a psychiatrist and a psychologist. Both experts testified that the court could conduct a meaningful retrospective competency hearing.

█ We review the district court's ruling that it could conduct a meaningful

nunc pro tunc hearing at the abuse of discretion level. *Bolius v. Wainwright,* 597 F.2d 986, 988 (5th Cir.1979). We find no abuse of discretion here. The court had available to it medical evidence compiled both before and after Wheat's trial, the state trial transcript which included several discussions between the court and Wheat, the testimony of numerous lay witnesses who observed Wheat contemporaneously to trial, and the opinions of several experts. The only type of evidence missing is expert medical evidence contemporaneous with the time of trial. The absence of this evidence does not compel a decision that the court may not conduct a meaningful nunc pro tunc hearing. The substantial amount of other available evidence supports the court's ruling that it could hold a meaningful retrospective hearing. We have previously stated that the trial transcript provides a "solid starting point," *Makris II,* 535 F.2d at 904, that lay testimony may provide sufficient evidence, *id.* at 905, and that experts may aid the district court's determination, *Martin III,* 583 F.2d at 1375. Since the district court had available to it all three of these types of evidence, we find no abuse of discretion in the court's ruling that it could conduct a meaningful nunc pro tunc hearing.

-2-

Wheat next argues that the district court erred in finding that he was competent to stand trial in 1980. The Supreme Court set out the now familiar standard for determining a defendant's competency in *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960): "[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of

the proceedings against him." Since we have affirmed the district court's vacation of Wheat's death sentence, we need only decide whether the district court correctly determined that Wheat was competent at the guilt-innocence phase of his trial.[9]

■ Before determining whether the district court correctly ruled on Wheat's competency, we pause briefly to note the burden of proof and standard of review. The burden of proving his incompetency rests on Wheat. *Martin III,* 583 F.2d at 1375; *Bruce II,* 536 F.2d at 1059. The question of competency presents a mixed question of law and fact, and a limited clearly erroneous rule applies to the district court's findings. *Makris II,* 535 F.2d at 907. While the clearly erroneous rule applies to evidentiary or primary factual findings, *Bruce II,* 536 F.2d at 1058, we take a "hard look" at the district court's ultimate finding as to competency. *Lokos,* 625 F.2d at 1267.

■ The district court conducted an extensive inquiry into Wheat's competency at his trial in 1980. The court, at Wheat's request, had Wheat committed to the medical center for federal prisoners in Springfield, Missouri, for a ninety-day period. The examining psychiatrist at Springfield, Dr. William Logan, appointed as an expert witness by the court under Fed.R.Evid. 706, testified that Wheat acted logically and rationally with respect to the guilt-innocence phase of his trial. Dr. Logan opined that Wheat's refusal to allow his counsel to introduce any evidence of his past psychiatric history at the sentencing phase of his trial was illogical and that Wheat did not have a rational understanding of the likelihood that he could receive the death penalty. Four other experts called by the State also agreed that

---

**9.** Wheat also argues that the district court erred in its interpretation of the *Dusky* test when deciding whether he was competent at the time of his sentencing. Recognizing the bifurcated nature of a capital murder trial, *see Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the district court conducted separate inquiries into Wheat's competency at

both the guilt-innocense and sentencing phases of the trial. Wheat's argument goes only to the district court's interpretation of *Dusky* as applied to the sentencing phase of Wheat's trial; therefore, we need not address the argument since we have affirmed the district court's vacation of Wheat's death sentence.

Wheat was competent at the time of the guilt-innocence phase of his 1980 trial. Wheat's expert, Dr. Harold Kaufman, a psychiatrist and a lawyer, testified that he believed that Wheat was a schizophrenic; however, Dr. Kaufman made it clear that Wheat's mental disorder only affected Wheat's ability with respect to the introduction of psychiatric testimony and history at the sentencing phase of his trial.

The district court also heard testimony from several lay witnesses who observed Wheat at the time of his trial. His trial counsel testified that, with the exception of Wheat's refusal to present psychiatric evidence at the sentencing phase, Wheat was competent and able to assist on his defense. He noted that Wheat suggested worthwhile voir dire questions, suggested questions to ask witnesses, and provided the name of an alibi witness. The district attorney who prosecuted Wheat also testified that he observed no irrational behavior on the part of Wheat at any time during either of the two trials.[10] The district court also read the depositions of the three state judges who presided over various proceedings involving Wheat's two trials. None of the judges recalled any unusual behavior, and two of the judges recalled being impressed by Wheat's in-court responses. The district court also examined the state trial court transcript which contained several colloquies between the court and Wheat. The colloquies reflected that Wheat was able to give coherent responses to the court's questions and was attentive to the proceedings.

We have no hesitancy in approving the district court's conclusion that Wheat failed to meet his burden of showing that he was incompetent during the guilt-innocence phase of his 1980 state court trial. All of the experts agreed that Wheat was competent at the time of the trial, the lay witnesses' contemporaneous observations indicate that he was competent, and the state court trial transcript indicates that he was competent. After taking a "hard look" at the district court's conclusion that Wheat

was competent and the case law on the subject, we believe that the district court reached the correct decision. *See Bolius,* 597 F.2d at 990 (district court may rely on coherent answers by the defendant at the state proceedings); *Martin III,* 583 F.2d at 1374 (district court may rely on testimony of lay witnesses and on the state court trial transcript); *Makris II,* 535 F.2d at 902–03 (district court relied on testimony of lay witnesses and rejected testimony of experts who retrospectively found the defendant incompetent).

### B.

Wheat's final argument for reversal of the district court's ruling is that the state trial court erred in admitting in evidence two notes Wheat wrote while in custody prior to trial and gave to jail officials. The two notes read as follows:

Notify my lawyer and the Sheriff that I want to plead guilty to the Mayer murder charges tomorrow and I want to be sentenced next week.

/s/ Kenneth Wheat

12–29–79

Kenneth Wheat

Harrison County

Gulfport, Mississippi

November 19, 1979

Press Release:

I am completely innocent of the Mayer murders. In order to spare myself and my family the needless suffering of a lynch mob trial, which I'll only end in a gas chamber verdict, I've decided to plead guilty and I will not appeal. The FBI and Sheriff Hobbs have falsified evidence, pressured witnesses into lying and have fed newsmedia a bunch of lies to make me look like a kill crazy monster. In Orlando the FBI told me they would force Harrison County to drop murder charges if I plead guilty to Federal Judge Wood's murder and they will make sure i get a good sentence. They've pressured my two uncles in Miami to try to destroy my alibi for Woods murder.

---

**10.** The first trial occurred less than two months before the second trial.

My christian faith and my clear conscience will give me the strength I need to endure forthcoming sufferings.

Although the two notes contain different dates, Wheat turned both notes over to the jail officials on the same day, November 29, 1979. Before trial Wheat moved to suppress the notes on the ground that they were involuntary confessions. The state trial court held that "the defendant was aware of his Fifth Amendment Rights and any notes that he wrote on that day were freely and voluntarily written without conviction, threats or intimidation and I will hold that they are admissible...." On direct appeal the Mississippi Supreme Court found no error in the trial court's ruling.

In his petition for writ of habeas corpus Wheat contended that his alleged incompetency at the time of trial prevented his statements from being the product of a rational intellect and free will. Relying on *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), Wheat argued that the state court could not admit the two statements because they were confessions. *Blackburn* prohibits the admission of the confession of a defendant who is incompetent. *Id.* at 208, 80 S.Ct. at 280, 4 L.Ed.2d at 248. The district court held that the notes were not confessions and that, therefore, *Blackburn* did not apply. We agree. A confession is an admission of guilt. *United States v. Robinson*, 459 F.2d 1164, 1167 n. 5 (D.C.Cir.1972); *Jones v. United States*, 296 F.2d 398, 402 (D.C.Cir. 1961) ("Confessions are admissions of the crime itself."), *cert. denied*, 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed.2d 406 (1962); *see also United States v. Meagher*, 531 F.2d 752, 754 (5th Cir.) *cert. denied*, 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976). Wheat does not confess guilt in either note; rather, he professes innocence and proceeds to explain why he wants to plead. Taken together, the notes are exculpatory. Thus, even if Wheat was incompetent, *Blackburn* would not apply. The district court correctly ruled that no constitutional error occurred.

## IV.

For the foregoing reasons, we affirm the order of the district court granting conditional habeas relief as to the sentencing phase of Wheat's trial and denying relief as to the guilt-innocence phase.

AFFIRMED.