# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00058-COA

**CRAIG HARRIS**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                  **APPELLEE**

DATE OF JUDGMENT:           11/18/2019
TRIAL JUDGE:                HON. JAMES McCLURE III
COURT FROM WHICH APPEALED:  PANOLA COUNTY CIRCUIT COURT,
                            SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     CRAIG HARRIS (PRO SE)
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ZAKIA HELEN ANNYCE BUTLER
NATURE OF THE CASE:         CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                AFFIRMED - 05/04/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Craig Harris appeals the Panola County Circuit Court's denial of his motion for post-conviction relief (PCR). On appeal, Harris argues the circuit court erred by failing to sua sponte order a competency hearing to determine his competency to plead guilty. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     A grand jury indicted Harris for one count of first-degree murder. The State offered Harris the opportunity to negotiate a reduced sentence in exchange for pleading guilty. The negotiations resulted in a reduced charge of second-degree murder. After Harris pled guilty

to second-degree murder, the circuit court sentenced him to serve forty years in the custody of the Mississippi Department of Corrections (MDOC). Harris then unsuccessfully moved for PCR. Aggrieved, he appeals.

## STANDARD OF REVIEW

¶3.     "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Hays v. State*, 282 So. 3d 714, 716-17 (¶5) (Miss. Ct. App. 2019) (quoting *Gunn v. State*, 248 So. 3d 937, 941 (¶15) (Miss. Ct. App. 2018)).

## ANALYSIS

¶4.     Harris argues that the circuit court should have sua sponte ordered a competency hearing prior to accepting his guilty plea and that the court's failure to do so violated his due process rights. Constitutional due process rights prohibit criminal prosecution if the defendant is not legally competent. *Joiner v. State*, 240 So. 3d 1243, 1244 (¶6) (Miss. Ct. App. 2018). Mississippi Rule of Criminal Procedure 12.1(a) provides that "to be deemed mentally competent, a defendant must have the ability to perceive and understand the nature of the proceedings, to communicate rationally with the defendant's attorney about the case, to recall relevant facts, and to testify in the defendant's own defense, if appropriate." The Mississippi Supreme Court has stated that to be held incompetent to stand trial, "there must be evidence indicating a reasonable probability that the defendant is incapable of making a rational decision." *Joiner*, 240 So. 3d at 1245 (¶8). Additionally, "[t]he presence of a mental

illness, defect, or disability alone is not grounds for finding a defendant incompetent to stand trial." MRCrP 12.1(a).

¶5.     Under Rule 12, "[t]here is a presumption of mental competency," but "[i]f at any time before or after indictment, the court, on its own motion or the motion of any party, has reasonable grounds to believe that the defendant is mentally incompetent, the court shall order the defendant to submit to a mental examination." MRCrP 12.1(a), 12.2(a). The "quantum of evidence" that requires a trial court to sua sponte order a competency hearing has not yet been defined, but "the United States Supreme Court has explained 'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required.'" *Joiner*, 240 So. 3d at 1245 (¶8) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

¶6.     Determining "whether a trial court has a 'reasonable ground' to suspect mental incompetency is within the discretion of the trial court," and "[t]his discretion is broad . . . because the trial judge is in the best position to observe the appellant and his demeanor." *Id*. at (¶6). "The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial." *Russell v. State*, 44 So. 3d 431, 435 (¶13) (Miss. Ct. App. 2010). The defendant bears the burden "to show by substantial evidence that his competency to stand trial is in question." *Jones v. State*, 274 So. 3d 940, 946 (¶18) (Miss. Ct. App. 2018). Notably, this Court "gives great weight to the statements made under oath during a guilty plea hearing." *Russell*, 44 So. 3d at 435 (¶15).

¶7.     Harris is presumed mentally competent, and he bears the burden of presenting

3

substantial evidence to show his competency is in question. Upon review, and as further discussed below, we find Harris has presented no evidence to show a reasonable ground for the circuit court to believe he was incompetent at his plea hearing.

### I. Evidence Available at Harris's Plea Hearing

¶8. Harris argues the circuit court received sufficient information to raise a bona fide doubt as to his competency but that the court failed to conduct a separate hearing in light of the information. The record from Harris's plea hearing shows the circuit court inquired about his mental state and was made aware of Harris's history with mental illness. The circuit court then properly investigated Harris's state of mind further by asking Harris specific questions. Contrary to Harris's allegations, the record indicates the circuit court initially had reservations about his competency and attempted to hold a separate conference, but Harris and his attorney opposed the need for a separate conference. Both Harris and his attorney assured the circuit court that Harris was competent at the time of the plea hearing and could enter a guilty plea:

> [JUDGE]: All right, Mr. Harris, since you say that you've been declared insane, I'm going to have to ask you to step back and have a seat, and I will visit with you and your – or I will let you talk to Mr. Defer for a second.
>
> . . . .
>
> [HARRIS]: Oh, no, I'm good. Talking right now?
>
> [JUDGE]: Yes, sir.
>
> [HARRIS]: Oh, I'm fine.
>
> [DEFER]: Your Honor, I think he misunderstood your question. When I

4

have talked to Mr. Harris over and over and I've repeatedly asked him was he ever declared insane or incompetent and he says no.

[JUDGE]: Is that correct, Mr. Harris?

[HARRIS]: Yeah, I did say that, but that was after though. I forgot to tell you that part of it though.

[DEFER]: But you're sane now?

[HARRIS]: Yeah.

. . . .

[DEFER]: Okay. But they didn't just lock you up and throw away the key in a mental institution?

[HARRIS]: No. No.

[DEFER]: Okay, that's what the judge is asking you.

[HARRIS]: No, it was nothing like that.

. . . .

[JUDGE]: All right, Mr. Hale [(Prosecutor)], but on your investigation you never received any kind of [information that] Mr. Harris has been declared mentally ill?

[HALE]: No, sir.

[DEFER]: I have not either, Your Honor. For the record, I met with his mother and his sister in my office, we went through his medical history . . . but there was not anything in that interview or during my investigation of the case that raised a red flag for me that he was mentally incompetent to proceed with this case. He has always communicated with me in this case. He's talked to me, he's asked me questions. I have no reservations in going forward.

¶9.    The record indicates that Harris was alert, able to communicate rationally with his

5

attorney and recall facts, and understood the nature of the proceedings. He freely participated in the matter and expressed himself in a clear and rational manner. Based on the evidence of Harris's statements under oath during his plea hearing, the circuit court did not have reasonable grounds to believe Harris was mentally incompetent. Thus, the circuit court was not required to sua sponte order a competency hearing before accepting Harris's guilty plea.

## II.     Additional Evidence Contained in Harris's PCR Motion

¶10.    A significant portion of Harris's appellate brief focuses on evidence that did not yet exist at the time of his plea hearing. To support his claim, Harris offers evidence including: the testimony of Sarah Houston, his sister; the circuit court's statements; an exhibit from Davis Family Pharmacy regarding the medication fluoxetine; and a document from Harris's psychologist.

¶11.    Houston's testimony, at a later sentencing date, described Harris's character and stated that he had been having mental problems for a while,[1] but her testimony did not provide the circuit court any evidence of additional competency concerns beyond those initially raised during his guilty plea that were properly investigated by the trial court. Harris also references a portion of the record where the circuit court later acknowledged at the same sentencing hearing that Harris "may or may not have some mental issues." As with Houston's testimony,

---

[1] Harris cites an additional portion of Houston's testimony in which she stated that Harris was remorseful but had told her he does not remember what happened and only admitted to the crime because somebody said he did it. The Comment to Rule 12.2 states "[s]ections (a) and (b) make clear that the determination of the defendant's competency to stand trial is separate and distinct from the determination of the defendant's sanity at the time of the offense." This section of Houston's testimony has no bearing on the issue of Harris's competency at the plea hearing and is not relevant to the claim Harris has presented on appeal. MRCrP 12.2(a).

the circuit court's statement was not intended to nor did it provide separate or additional evidence that would lead the circuit court to believe he was incompetent to proceed with his case. As a result, these statements could not have served as evidence giving rise to a reasonable ground for the circuit court to doubt Harris's competency to plead guilty.

¶12.    Harris also includes a document from Davis Family Pharmacy describing the uses and side effects of fluoxetine, sold under the brand name "Prozac," and a 2011 document from his psychologist attesting to his severe depression and prior suicide attempt. Depression, anxiety medication, and a suicide attempt alone do not necessarily rise to the level of showing incompetence to enter a guilty plea.[2] Further, Harris's argument that these documents support finding him incompetent is misplaced. Harris submitted both documents to the circuit court for the first time with his PCR motion. Neither of these documents were available as evidence during his plea hearing, and thus, they could not form the basis for

---

[2] *See Hickenbottom v. State*, 223 So. 3d 805, 808 (¶11) (Miss. Ct. App. 2017) ("Despite being advised on [the defendant's] past mental-illness history including depression, suicide attempts, and hospitalizations, the trial judge found no evidence at the hearing to support Hickenbottom's assertion that he [was] incompetent to stand trial."); *see also Benoman v. State*, 166 So. 3d 609, 611 (¶7) (Miss. Ct. App. 2015) (holding a letter from the East Mississippi State Hospital that "recommended placing [the defendant] in a mental psychiatric unit to target his core problems, major depression and suicidal ideations . . . do[es] not indicate that he was incompetent to stand trial."); *see also Fortenberry v. State*, 151 So. 3d 222, 224-25 (¶8) (Miss. Ct. App. 2014) (holding "[w]hile [defendant] stated that he was on several prescription medications, he did not, at any point, inform the trial court that the medication affected his mental state or that he had doubts about pleading guilty. . . . We, like the trial court, have been provided only his bare assertions. . . . Therefore, we cannot say that the trial court erred in summarily rejecting [the defendant's] contention that his prescription medication rendered his guilty plea involuntary.").

7

reasonable grounds to question Harris's competency.[3] Because none of Harris's offered evidence indicates that the circuit court erred by failing to sua sponte order a competency hearing, we find this issue lacks merit.

### III. Circumstances Surrounding Harris's Guilty Plea

¶13. Harris's claim that the circumstances surrounding his guilty-plea agreement raise bona fide doubts as to his competency also lacks merit. He alleges that a bona fide doubt is raised where a defendant's guilty plea is sudden and there is no attempt to seek any concessions. Harris contends that his guilty plea was sudden because it was made within three months of his indictment and that he entered a guilty plea without incentive since it was for the maximum sentence. Contrary to Harris's contention, he did receive an incentive to plead guilty. Harris was originally indicted on a charge of first-degree murder, but the charge was reduced to second-degree murder in exchange for his guilty plea. *See Vance v. State*, 799 So.

---

[3] Harris also offers these documents to support his argument that his actions did not constitute a criminal act because he was taking Prozac and the risk of side effects was greater for him as a person who previously attempted suicide. Whether Harris's actions constitute a criminal act goes to his mental capacity at the time of the action, rather than his capacity at the time of the plea hearing. The issue in this case is Harris's competency at his plea hearing, not Harris's capacity at the time of the crime. The Comment to Mississippi Rule of Criminal Procedure 12.1 says,

> Rule 12.1 addresses only the defendant's competency to stand trial, and not the defendant's possible insanity at the time of the alleged offense. *See Parker v. State*, 30 So. 3d 1222, 1230-31 (Miss. 2010); *Medina v. California*, 505 U.S. 437, 448, 112 S. Ct. 2572, 2579, 120 L. Ed. 2d 353 (1992) ("[T]here are significant differences between a claim of incompetence and a plea of not guilty by reason of insanity.")[.]

Thus, the documents from Davis Family Pharmacy and Harris's psychologist are irrelevant here.

2d 100, 103 (¶10) (Miss. Ct. App. 2001) (holding "a defendant is entitled to get the benefit of his bargain, and we find that Vance got just that. The terms of the agreement were: in exchange for a confession and guilty plea from Vance, the prosecutor would lower the charge from murder to manslaughter"). The circumstances surrounding Harris's guilty plea raised no bona fide doubt that would have given the circuit court reasonable grounds to sua sponte order a competency hearing. Accordingly, this argument lacks merit.

## IV. A Meaningful Hearing

¶14. In his final assignment of error, Harris properly cites the standard for determining "whether [a] court can now conduct an adequate hearing to retrospectively determine the petitioner's competency at the time of his trial." *Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir. 1986) (citing *Drope*, 420 U.S. at 183). However, this standard[4] only applies if the

___

[4] "This court has repeatedly sanctioned nunc pro tunc proceedings where there is sufficient data available to guarantee reliability." *Wheat*, 793 F.2d at 630. In determining whether a retrospective hearing would be meaningful and adequate, the court considers "the transcript of the trial," "contemporaneous expert medical evidence," and "recollections of non-experts (including the observations of the trial judge) who had the opportunity to interact with defendant during the relevant period." *Id*. The Mississippi Supreme Court embraced *Wheat* in *Pitchford*, ultimately finding,

Where sufficient information is available to conduct a meaningful hearing to evaluate retrospectively the defendant's competence to stand trial, such a hearing does not violate due process standards. *See, e.g.*, *Wheat*, 793 F.2d at 630 ("The test for the district court in determining the question of meaningfulness is whether 'the quantity and quality of available evidence was adequate to arrive at an assessment that could be labeled as more than mere speculation.'"). "Contemporaneous expert medical evidence often provides the most useful evidence" of whether a meaningful retrospective hearing may be held. *James* [*v. State*], 86 So. 3d [286,] 293 [(¶27) (Miss. Ct. App. 2012)] (quoting *Wheat*, 793 F.2d at 630). We also are in accord with the Fifth Circuit that the State should bear the burden of demonstrating that a meaningful retrospective competency hearing can be conducted. Once demonstrated, the

defendant has met his burden to show the court committed a violation by not conducting a competency hearing. Here, Harris has failed to show that the circuit court committed a violation by not ordering a competency hearing. Therefore, the standard for conducting a retroactively meaningful hearing does not apply to Harris's claim.

## CONCLUSION

¶15.    During Harris's plea hearing, the circuit court was made aware of Harris's history with mental illness, and the record indicates any potential competency issues were dispelled after an investigation by the circuit court wherein Harris and his attorney both averred that Harris was competent to plead guilty. This Court finds Harris failed to show there was any reasonable ground to conclude he was incompetent to plead guilty. We therefore affirm the circuit court's denial of Harris's PCR motion.

¶16.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**

---

defendant then bears the burden to prove he or she was "most probably" incompetent at the time of trial.

*Pitchford v. State*, 240 So. 3d 1061, 1070 (¶¶50-51) (Miss. 2017).