IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 90-1710

BOBBY GLEN WILCHER,

Petitioner-Appellant,

versus

EDWARD HARGETT, Superintendent
Mississippi State Penitentiary,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

(November 19, 1992)

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Bobby Glen Wilcher appeals denial of his petition for writ of habeas corpus, challenging both his conviction and his death sentence. He asserts that his conviction was obtained in violation of his Fifth and Sixth Amendment rights and that his death sentence was imposed in violation of the Eighth Amendment. We affirm the district court's denial of Wilcher's petition on all claims except his claim that the jury relied on an unconstitutionally vague aggravating factor. We vacate the dismissal of the habeas petition as to this claim and remand to the district court with instructions to issue the writ unless the State of Mississippi initiates

appropriate proceedings within a reasonable time as set forth in Clemons v. Mississippi, 494 U.S. 738 (1990).

I.

On March 5, 1982, Wilcher met two acquaintances, Velma Odell Noblin and Katie Bell Moore in a Scott County bar. When the bar closed, Wilcher convinced the two women to give him a ride home. Wilcher then gave them directions leading to a deserted area in Bienville National Forest. He stabbed Noblin and Moore to death, left their bodies, and took their jewelry and their car.

Wilcher had cut his finger during the murder and went to the hospital for treatment of his wound. En route, he was stopped for speeding. The officer saw two purses on the front seat and a black bra on the back seat. Wilcher was covered in blood. He told the officer he was hurrying to the hospital to get his finger treated and asked for an escort. The officer followed Wilcher to the hospital, arriving at 2:00 a.m. At the hospital, Wilcher gave the officer a blood-covered knife. Wilcher's thumb was treated and he was released.

Later that day, Wilcher was arrested on an unrelated larceny charge. Soon thereafter, Noblin and Moore's bodies were discovered on the service road in the national forest. After learning about Wilcher's hospital visit of the night before, Sheriff Glen L. Warren and Deputy Otis Kelly gave Wilcher a standard Miranda warning and questioned him. Wilcher declined to make any statement.

Wilcher asked the Sheriff to see his parents. The officers took him to his father's home and allowed him to talk to his parents in a separate room. Wilcher was returned to the sheriff's office and given Miranda warnings. At 9:14 p.m. on March 7, 1982, Wilcher signed the waiver of his Miranda rights and gave a statement which was reduced to writing. Wilcher signed this statement which admitted killing both Noblin and Moore with a knife.

On March 8, Wilcher's father, Gene Wilcher, invited officers to his home and escorted them to his son's bedroom and pointed out a styrofoam container on top of a chest. The container held a watch, two rings, and a necklace later determined to belong to Velma Noblin. On March 11, Wilcher directed Sheriff Warren and a deputy to an unpaved road in rural Scott County and pointed out the location of the two purses and the black bra that had been in the car when he was stopped for speeding.

On the way back to the jail that day, Wilcher requested that he be allowed to speak with his mother. The sheriff took him to the Wilcher home where he was allowed to visit with his mother for a while. After this visit, upon his return to jail, Wilcher gave a more detailed statement again admitting that he killed Noblin and Moore in order to rob them. This statement was more detailed than the first statement. He tricked them into driving down a deserted road and then stabbed them to death so that he could take their jewelry.

3

At approximately the same time as Wilcher was giving this statement, Wilcher was being indicted by the Scott County grand jury for both murders. The district court found that Wilcher signed the waiver form before giving this statement at 12:52 p.m. and the statement was completed and signed by Wilcher at 2:05 p.m. At about 1:30 that same afternoon, the Scott County Circuit Judge appointed counsel for Wilcher. Wilcher was unaware that he had been appointed counsel until after he had signed the second statement.

Wilcher was indicted on March 11, 1982 for the capital murders of Katie Moore and Velma Odell Noblin. He was tried separately for the two murders. The first trial, held in Scott County, Mississippi, for the murder of Velma Noblin led to a conviction of capital murder and a sentence of death on July 31, 1982. The sentencing jury found the following aggravating circumstances:

> 1. the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit the crime of robbery or kidnapping.
>
> 2. The capital offense was especially heinous, atrocious, or cruel.

In accordance with Mississippi's capital sentencing procedure, the jury found that these aggravating circumstances outweighed any mitigating circumstances.

On direct appeal to the Mississippi Supreme Court, Wilcher raised eleven claims.[1]

---

[1]

> 1. The trial court erred in not granting the appellant a change of venue;

4

The Mississippi Supreme Court affirmed the conviction and sentence on February 15, 1984. This opinion was modified and Wilcher's petition for rehearing was denied on April 25, 1984. Wilcher v. State, 448 So.2d 927 (Miss. 1984).

---

2. The trial court erred in overruling the appellant's motion for continuance;

3. The trial court erred in overruling appellant's motion to quash the death qualification and in excusing juror for cause;

4. The trial court erred in admitting into evidence the watch, rings and necklace of Velma Odell Noblin for the reason that they were the fruits of an illegal search;

5. The trial court erred in admitting appellant's written statements and the fruits thereof;

6. The trial court erred in overruling appellant's objection to the state eliciting from him on cross examination the fact that he was arrested for larceny, a charge unrelated to this case;

7. The trial court erred in granting instruction S-1A and S-7 and erred in refusing instructions D-2 and D-37;

8. The trial court erred in overruling appellant's motion to make the final argument before the jury during the guilt phase;

9. The trial court erred in granting instructions S-1, S-2, and S-5, and in refusing D-14, D-15, and D-16 during the sentencing phase of the trial;

10. The trial court erred in sustaining objections and excusing the jury during oral argument of appellant's counsel;

11. The trial court erred in not granting the appellant a mistrial during the argument when district attorney called appellant a "Butcher."

5

Wilcher filed a petition for writ of certiorari raising the issues of the trial court's refusal to allow defense counsel to describe the gas chamber and otherwise emphasize the gravity of the jury's decision; whether there was sufficient evidence to permit the jury to find an aggravating factor of kidnapping; whether the Mississippi statutory aggravating factor of murder that is "especially heinous, atrocious or cruel" is unconstitutionally vague; and whether the Mississippi death penalty statute impermissibly places the burden on the defendant to prove there are sufficient mitigating factors to overcome the aggravating factors. Wilcher v. Mississippi, 469 U.S. 873 (1984).

Wilcher's trial for the capital murder of Katie Moore was moved to Harrison County, Mississippi. The jury returned a verdict of guilty and a sentence of death, finding the same aggravating circumstances as were found in the Noblin trial: murder during the commission of or attempt to commit robbery or kidnapping and an offense that was especially heinous, atrocious or cruel.

On direct appeal to the Mississippi Supreme Court, Wilcher again raised eleven challenges to his second conviction and sentence.[2]

---

[2]
1.  The trial court erred in not sustaining appellant's plea of former or double jeopardy;

2.  The trial court erred in overruling the appellant's motions for continuance;

3.  The trial court erred in allowing the death qualification voir dire questions;

4.  The trial court erred in refusing to allow the

6

The Mississippi Supreme Court affirmed Wilcher's second conviction and death sentence on July 11, 1984. <u>Wilcher v. State</u>, 455 So.2d 727 (Miss. 1984), <u>cert. denied</u>, <u>Wilcher v. Mississippi</u>, 470 U.S. 1034 (1985).

Wilcher filed two Motions to Vacate or Set Aside Judgment and Sentence in the Mississippi Supreme Court in accordance with the Mississippi Uniform Post Conviction Collateral Relief Act. The two motions, raising 18 grounds for relief, were consolidated. The Mississippi Supreme Court denied the requested relief. <u>Wilcher v. State</u>, 479 So.2d 710 (Miss. 1985), <u>cert. denied</u>, 479 U.S. 1078 (1986).

---

defendant to cross examine Gene Wilcher when called as a witness for the state;

5. The trial court erred in admitting into evidence the watch, rings, and necklace of Velma Odell Noblin for the reason that they were the fruits of an illegal search;

6. The trial court erred in admitting into evidence, over objection of counsel, appellant's oral and written statements and the fruits thereof;

7. The trial court erred in granting instructions S-1 and S-7 and erred in refusing instruction D-2 during the guilt phase;

8. The trial court erred in refusing instructions D-17 and D-37 during the guilt phase;

9. The trial court erred in refusing instructions D-43 and D-44 during the guilt phase;

10. The trial court erred in refusing instruction D-11 during the sentencing phase;

11. The trial court erred in entering its supplemental judgment of September 23, 1982.

Wilcher filed petitions for writ of habeas corpus in the United States District Court for the Southern District of Mississippi challenging both his convictions and sentences. The district court consolidated these petitions and denied relief on June 19, 1990. Wilcher filed notice of appeal and application for certificate of probable cause. The certificate of probable cause was granted on September 24, 1990.

## II.

Wilcher asserts here that Mississippi denied his Sixth Amendment rights by taking a second statement after appointment of counsel. This written statement was admitted over objection at both trials.

A defendant's Sixth Amendment right to counsel attaches upon the initiation of adversary proceedings. Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404 (1986). Under Mississippi law, adversary proceedings arguably began when a warrant was issued for Wilcher's arrest, but certainly so with his indictment. Wilcher executed a written waiver of his right to counsel immediately before giving his second statement to the officers. This voluntary waiver of his Sixth Amendment rights was constitutionally valid. Montoya, 955 F.2d at 282; Patterson v. Illinois, 487 U.S. 285 (1988) (waiver of right to counsel after Miranda warning is constitutionally valid waiver).

Wilcher asserts that even if his waiver was voluntary and knowing, the questioning in this case violated the prophylactic rule of Michigan v. Jackson, 106 S.Ct. at 1411. The Supreme Court

8

held in <u>Jackson</u> that "if police initiate interrogation after a defendant's assertion at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." <u>Id.</u> The State argues that Wilcher never took any action to invoke his right to counsel and therefore had not triggered the <u>Jackson</u> rule.

We recently addressed the effect of appointment of counsel on the rights of a defendant who has never asserted or accepted the counsel. We held that a defendant's Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney. <u>Montoya v. Collins</u>, 955 F.2d 279 (5th Cir. 1992).

<u>Montoya</u> was appointed counsel at his arraignment, but made no statement when counsel was appointed. 955 F.2d at 282. After arraignment, Montoya waived his rights and made an incriminating statement to police officers. We held that "for purposes of <u>Jackson</u>, an `assertion' means some kind of positive statement or other action that informs a reasonable person of the defendant's `desire to deal with the police only through counsel.'" <u>Id</u>. at 283. Thus, we concluded that Montoya's interrogation did not violate the rule of <u>Jackson</u> because he did not assert a right to counsel and thereby trigger its protection.

Wilcher likewise did not assert a right to counsel in his interrogation by the officers. Under <u>Montoya</u> he was not protected by the rule in <u>Jackson</u> and voluntarily waived his right to counsel under the Sixth Amendment. <u>Montoya</u> binds this panel.

9

Wilcher asserts that in exacting his confessions, Mississippi contravened the procedural protections of Miranda v. Arizona, 384 U.S. 436 (1966). The basis for Wilcher's argument is the repeated questioning of Wilcher between March 6 and March 11. Wilcher was given Miranda warnings on March 6 at 7:18 p.m., and signed the waiver of rights, but declined to make a statement. He asked to see his parents and was taken to his parents' home. At 9:11 p.m. Wilcher was again given Miranda warnings and executed a waiver. At this point, Wilcher gave his first statement. At 10:20 p.m. Wilcher was given his warnings again, but declined to make a further statement. On March 9, Wilcher was again advised of his rights and signed a waiver, but did not make a statement. On March 11, at 12:52 p.m. Wilcher was once more advised of his rights, waived them, and made his second statement to the officers.

We ask whether Wilcher's "right to cut off questioning was scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104 (1975). Determining whether this standard was met requires case-by-case analysis. Charles v. Smith, 894 F.2d 718, 726 (5th Cir. 1990). Our review of the facts surrounding Wilcher's statements convinces us that the officers acted within the bounds of Miranda and committed no constitutional violations.

The officers questioning Wilcher gave him his Miranda warnings before every questioning. Wilcher signed a written waiver of his right to remain silent on each of these occasions. There is no indication on this record that Wilcher ever asked that questioning

11

be stopped or that he invoked his right to remain silent. In fact, at each turn Wilcher waived that right in writing.

Wilcher relies upon two aspects of the circumstances of his questioning to support his claim. First, he asserts that the Sheriff's decision to take him at his request to see his parents "was part of an inducement by the Sheriff and Deputy to obtain information from Bobby Wilcher." We are not persuaded that allowing Wilcher to see his parents was so overbearing that it worked a denial of constitutional rights.

Second, Wilcher seems to rely upon the amount of time elapsing between questionings. The shortest time between unproductive interrogations was almost two hours and that was on March 6, not the "few minutes" we found troublesome in Charles. Wilcher had been taken to see his parents, but he indicated when first questioned that he would be willing to talk once he had seen his parents. This record does not support the conclusion that the officers "persist[ed] in repeated efforts to wear down [Wilcher's] resistance and made him change his mind." Kelly v. Lynaugh, 862 F.2d 1126, 1131 (5th Cir. 1988). Compare, Id. (questioning hours apart with repeated Miranda warnings) with United States v. Hernandez, 574 F.2d 1362 (5th Cir. 1978) (repeated questioning within minutes).

## IV.

Wilcher asserts that the district court erred in failing to grant him an evidentiary hearing on his ineffective assistance of counsel claim. A petitioner is entitled to a federal evidentiary

12

hearing only where there are "disputed facts and the petitioner did not receive a full and fair hearing in a state court." Wiley v. Puckett,969 F.2d 86, 98 (5th Cir. 1992). No hearing is required where the record is complete and the evidence in the record is sufficient to provide full review of the petitioner's claim. Skillern v. Estelle, 720 F.2d 839, 850-51 (5th Cir. 1983).

Before a conviction or sentence will be overturned for ineffective assistance of counsel, a petitioner must show both that counsel's performance did not amount to reasonably effective assistance and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064 (1984). To show prejudice, Wilcher must demonstrate that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068.

Wilcher levels two challenges to counsel's performance: (1) that counsel failed to reasonably search for mitigating evidence and (2) that counsel failed to present any mitigating evidence concerning Wilcher's background. The district court rejected this claim in a detailed examination of the record, finding that Wilcher's trial counsel had "rendered valuable and effective assistance." We have found no basis for a contrary conclusion and reject this claim for essentially the same reasons as the federal district judge.

13

V.

Wilcher asserts that the jury instructions at his capital sentencing proceedings did not allow a juror to consider a mitigating circumstance not found by all jurors contrary to <u>Mills v. Maryland</u>, 108 S.Ct. 1860 (1988) and <u>McKoy v. North Carolina</u>, 110 S.Ct. 1227 (1990).

Mississippi urges that this argument was never made to the state trial or appellate courts. Mississippi continues that we need not address procedural bar because in any event, the rule of <u>Mills</u> and <u>McKoy</u> is a new rule under <u>Teague v. Lane</u>, 109 S.Ct. 1060 (1989), not available to Wilcher in federal habeas. Wilcher replies that the rule is only an application of <u>Lockett</u> and <u>Eddings</u>. This court has already decided this issue concluding that <u>Mills</u> was a new rule barred by <u>Teague</u>. <u>Cordova v. Collins</u>, 953 F.2d 167, 173 (5th Cir. 1992).

Wilcher asserts that <u>Cordova</u> considered only the applicability of the first exception to <u>Teague</u>, not its second exception for rules prerequisite to fundamental fairness "implicit in the concept of ordered liberty." 109 S.Ct. at 1077. We disagree with this narrow reading of <u>Cordova</u>. It is true that <u>Cordova</u> did not explicitly treat each <u>Teague</u> exception, but <u>Cordova</u> did implicitly decide that such a failure to allow consideration by the jury of all mitigating evidence is not subject to the second <u>Teague</u> exception.

14

VI.

Wilcher asserts that the jury instructions impermissibly created a risk that a non-unanimous jury could find an aggravating circumstance. The jury found that "the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit the crime of robbery or kidnapping." Wilcher argues that by using "robbery or kidnapping" in the disjunctive, a jury could return a finding of this circumstance with less than twelve jurors agreeing that he was committing a robbery and less than twelve agreeing on kidnapping.

The district court found this claim procedurally barred because it was not objected to at trial or raised on direct appeal. We have found in previous cases that "the [Mississippi] Supreme Court regularly applies the contemporaneous objection rule to the cases before it." Hill v. Black, 887 F.2d 513, 516 (5th Cir. 1989). The record does not reflect any objection in the trial court to the use of the disjunctive "kidnapping or robbery" instruction. We are barred from the merits of this claim.

Wilcher asserts that one of the aggravating circumstances found by the jury in both his trials, that the offense was "especially heinous, atrocious or cruel," is unconstitutionally vague as held by the Supreme Court in Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441 (1990). The district court held that Wilcher could not rely upon the rule in Clemons on collateral review because it was a new constitutional rule under Teaque v.

15

<u>Lane</u>, 489 U.S. 288, 109 S.Ct. 1060 (1989). The district court did not have the benefit of the Supreme Court's decision in <u>Stringer v. Black</u>, 112 S.Ct. 1130 (1992) which held that <u>Clemons</u> was not new under <u>Teague</u>.

Mississippi asserts that Wilcher's <u>Clemons</u> claim is procedurally barred because it was not raised on direct appeal. On direct appeal in the Noblin conviction, Wilcher challenged the sufficiency of the evidence to support an instruction on the "especially heinous" aggravating circumstance. On direct appeal in the Moore conviction, Wilcher did not challenge the "especially heinous" instruction.

Wilcher did challenge the sufficiency of the evidence supporting the "especially heinous" instruction on collateral review in the state courts in which both the convictions and sentences were consolidated. The Mississippi Supreme Court's dispatch of the claim was brief. This claim was labelled claim F in the court's opinion. The court held

> regarding Issues C,D,E,F,G,H,I,J,K,L and M, this Court holds that all enumerated questions were raised and addressed on the first appeal, or on the second appeal, or on both appeals. Therefore, these issues cannot be relitigated here as the issue is res judicata. Where the issue was not raised on direct appeal, or not raised at the trial court, the claims are procedurally barred and not subject to further review by this Court. 479 So.2d 710, 712 (Miss. 1985)(citations omitted).

Wilcher asserts that the state court did not make a "plain statement" that review of his claim was procedurally barred under <u>Harris v. Reed</u>, 489 U.S. 255 (1989). Wilcher asserts that even if the Mississippi Supreme Court held his <u>Clemons</u> claim procedurally

16

barred, the bar is not an adequate ground to preclude federal relief because it has not been consistently enforced.

A state procedural ground to bar consideration of an issue is not adequate unless it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988). We have found a time window during which the Mississippi Supreme Court did not strictly or regularly assert a procedural bar to claims not raised on direct appeal. Wheat v. Thigpen, 793 F.2d 621 (5th Cir. 1986); Reddix v. Thigpen, 805 F.2d 506, 510 (5th Cir. 1986); Smith v. Black, 904 F.2d 950, 971 (5th Cir. 1990). The Mississippi Supreme Court announced this procedural bar in 1983, but we found in Wheat that in 1985 that court considered a claim in a collateral proceeding that had not been raised on direct appeal. 793 F.2d at 626, citing Caldwell v. State, 481 So.2d 850 (Miss. 1985).

Wilcher's direct appeals were both decided in 1984. The Mississippi Supreme Court decided his collateral review on October 30, 1985, before Caldwell was decided in December 1985. We are not persuaded that Wilcher's Clemons claim is procedurally barred from federal habeas corpus review.

The instruction on the "especially heinous, atrocious, or cruel" aggravating circumstance given at Wilcher's sentencing proceeding is indistinguishable from that found unconstitutional in Clemons. See also Wiley v. Puckett, 969 F.2d 86 (5th Cir. 1992). We therefore conclude that one of the aggravating circumstances used in imposing Wilcher's sentence was unconstitutionally vague. We vacate the dismissal of Wilcher's petition for habeas corpus and

17

remand to the district court with instructions to issue the writ unless the State of Mississippi initiates in a reasonable time proceedings in state courts appropriate under <u>Clemons</u>. In all other respects, the judgment of the district court dismissing the petition is affirmed.[3]

---

[3]<u>See</u> <u>Wiley v. Puckett</u>, 969 F.2d 86 (5th Cir. 1992).